**NATIONSCREDIT COMMERCIAL CORPORATION, Appellant–Defendant,**

v.

**GRAUEL ENTERPRISES, INC., Appellee–Plaintiff.**

No. 79A04–9712–CV–516.

Court of Appeals of Indiana.

Dec. 14, 1998.

("NationsCredit"),[1] a commercial lender, and Grauel Enterprises, Inc. ("Grauel"), its borrower, concerning ownership of prompt-payment discounts accumulated in a "Reserve Account" maintained by NationsCredit under a financing and security agreement. Grauel filed a declaratory judgment action seeking a determination that it owned the discounts. NationsCredit unsuccessfully moved for summary judgment. Following a bench trial, the court found in favor of Grauel. NationsCredit appeals both the denial of its summary judgment motion and the final order.

We affirm in part, reverse in part and remand.

## ISSUES

NationsCredit presents the following consolidated and re-stated issues for our review:

1. Whether the trial court erred when it determined that the contract is ambiguous and, thus, considered parol evidence to interpret the contract.

2. Whether the evidence supports the trial court's conclusion that Grauel owned the discounts held in the Reserve Account.

3. Whether NationsCredit committed criminal conversion when it refused to pay the discounts to Grauel after Grauel had paid the balance due under the credit line.

## FACTS AND PROCEDURAL HISTORY

The contractual relationship between NationsCredit and Grauel began in 1986 when they entered into a financing and security agreement whereby NationsCredit provided credit to Grauel for its rent-to-own inventory. The agreement was amended in 1987 and 1990 (First and Second Amendments). By late 1990, Grauel was in financial difficulty, and the parties agreed to a Third Amendment in 1991. Under Section 2 of that Amendment, NationsCredit paid Grauel's vendors directly and deducted the gross amount of each invoice from Grauel's line of credit. Grauel paid interest on the full amount, but NationsCredit negotiated

Michael J. Lewinski, Michael A. Swift, Ice Miller Donadio & Ryan, Indianapolis, Randall Lee Vonderheide, Vonderheide & Knecht, Lafayette, for Appellant-Defendant.

Roger Wm. Bennett, Christine A. Desanctis, Bennett, Boehning & Clary, Lafayette, for Appellee-Plaintiff.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

This appeal arises from a dispute between NationsCredit Commercial Corporation

---

1. NationsCredit had predecessors in interest during the decade of the agreement. Subsequent to the inception of this case, NationsCredit Commercial Corporation became NationsCredit Distribution Finance, Inc. For clarity, we use only "NationsCredit" throughout this opinion.

prompt-payment discounts from Grauel's vendors and retained those discounts in a Reserve Account used at its option "to offset any shortage or default in interest and/or principal payable...." Under Section 3 of the Third Amendment, Grauel specifically granted NationsCredit a "security interest" in the Reserve Account established in Section 2.

In July of 1993, NationsCredit sent Grauel a letter of intent to renew the credit line. Although the letter did not propose any change in ownership of the Reserve Account, the parties entered into a Fourth Amendment which stated, *inter alia*, that the Reserve Account shall be "owned" by NationsCredit. In March of 1995, the parties signed a Fifth Amendment which deleted the Reserve Account language in Section 2 but placed similar language in Section 5. However, the new Section 5 also stated that NationsCredit owned the Account. Section 3 of the Third Amendment, which gave NationsCredit only a security interest in the Reserve Account, was left undisturbed by the Fourth and Fifth Amendments.

Grauel's financial position improved substantially during the terms of the Fourth and Fifth Amendments, and Grauel found another lender. On January 20, 1996, Grauel paid NationsCredit the balance due under the credit line and requested return of the Reserve Account, worth approximately $332,-000.00. NationsCredit refused, stating it had taken the monies into income. In response, Grauel filed suit seeking a declaration of its rights, an accounting and damages under theories of money had and received, unjust enrichment, conversion, breach of the duty of good faith and fair dealing, and constructive fraud.

NationsCredit counterclaimed for attorney's fees and expenses, then moved for summary judgment on all counts. NationsCredit argued that, pursuant to the unambiguous terms of the agreement, it owned the Reserve Account. On the same day, Grauel filed its motion for partial summary judgment claiming it was entitled to the Account. The trial court decided the contract was ambiguous and denied both motions.

Following a bench trial, the court held that NationsCredit "knowingly and intentionally withheld the inventory purchase discounts which belonged to Grauel after Grauel had fully satisfied its debts and obligations to NationsCredit." The trial court denied NationsCredit's motion for clarification of its decision, then found no just reason for delay and certified the order as a final judgment "as to all issues except for the award of damages, pre-judgment interest and attorney fees."

## DISCUSSION AND DECISION

### Standard of Review

The trial court entered written findings and conclusions *sua sponte*. On review, the court's findings and judgment will not be set aside unless they are clearly erroneous. Ind. Trial Rule 52(A). We limit our review to determining whether the evidence supports the findings and whether the findings support the judgment. *Parke State Bank v. Akers*, 659 N.E.2d 1031, 1033 (Ind.1995). In determining whether a trial court's findings are clearly erroneous, we will not reweigh the evidence nor judge the credibility of witnesses. *Midland–Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 795 (Ind.Ct.App.1986). Only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom are examined. *Id.*

### Issue One: Contract Interpretation

NationsCredit first contends that the trial court improperly entered findings based upon parol evidence. Specifically, NationsCredit asserts that the contract unambiguously provides that it owns the Reserve Account and, thus, that the trial court should have interpreted the parties' intent from the "four corners" of the contract as a matter of law at the summary judgment stage.

When interpreting a contract, the court's paramount goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of the agreement. *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 42 (Pa.Su-

per.Ct.1997).[2] When the language of a contract is clear and unequivocal, courts interpret its meaning by its content within the four corners of the document. *First Home Savings Bank, FSB v. Nernberg*, 436 Pa.Super. 377, 648 A.2d 9, 14 (1994). In contrast, when the words used in a contract are ambiguous, a court may examine the surrounding circumstances to ascertain the intent of the parties. *Bethlehem Steel*, 703 A.2d at 42. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Sun Co. v. Pennsylvania Turnpike Comm'n*, 708 A.2d 875, 878 (Pa. Commw.Ct.1998). A determination of whether a contract is ambiguous is a question of law. *Id.* When determining whether a contract is ambiguous, a court must view the contract as a whole and not in discrete units. *Bethlehem Steel*, 703 A.2d at 42.

■ Here, Section 2 of the Third Amendment, executed in 1991, originally established the Reserve Account. Under Section 3 of the Amendment, Grauel unambiguously granted a security interest in the Account to NationsCredit. At that point, no ownership language contradicted the security interest language. The Fourth Amendment, in 1993, added the following sentence to Section 2:

> All funds in the Reserve Account shall be and remain at all times wholly owned by Secured Party, and Debtor shall not acquire any interest therein.

Approximately two years later, the parties entered into a Fifth Amendment which deleted the Reserve Account language in Section 2 and added a new Section 5 which repeated that language, specifically stating:

2. The financing and security agreement, as amended, is attached to Grauel's complaint and expressly provides that the agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania. However, in support of its argument that the contract is unambiguous, NationsCredit cites both Indiana and Pennsylvania cases. Grauel argues that Indiana law should be applied because NationsCredit did not give the trial court notice that Pennsylvania law was applicable. This court has concluded that, before a trial court can apply the laws of another state, a party must request that it do so. *Holland v. Miami Systems, Inc.*, 624 N.E.2d 478, 482 (Ind.Ct.App.1993), *trans. denied*. In addi-

> The amount of any such discounts received by Secured Party shall be held in a reserve account ("Reserve Account") and *may, at Secured Party's option, be used to offset any shortage or default in interest and/or principal payable under the Credit Line or which may become due as a result of a default under the Credit Line* or any agreement given as security therefor. The Reserve Account shall in no way reduce the interest rate payable on the Credit Line by Debtor. *All funds in the Reserve Account shall be and remain at all times wholly owned by Secured Party, and Debtor shall not acquire any rights or interests therein.*

However, neither the Fourth nor Fifth Amendment deleted Section 3, which gave NationsCredit a security interest in the Reserve Account. A "security interest" is an "interest in personal property or fixtures which secures payment or performance of an obligation." 13 Pa. Cons.Stat. Ann. § 1201. As the foregoing indicates, the contract as amended by the Fourth and Fifth Amendments, purports to give NationsCredit both outright ownership as well as a security interest in the Reserve Account. These provisions are incompatible and render the agreement ambiguous on its face.

Still, NationsCredit argues that the trial court ignored the provision in the Fifth Amendment stating that NationsCredit "wholly owned" the Account and that Grauel "shall not acquire" any interest therein. We agree that, when read in isolation, the ownership language is unequivocal. However, a court interpreting a contract must view the contract as a whole. *See Bethlehem Steel*, 703 A.2d at 42. The Fifth Amendment did

tion, there must be reasonable notice to the adverse parties before such an application can be granted. *Id.; see* Ind.Code § 34-3-2-4 (repealed and recodified at Ind.Code § 34-38-4-4) (when a party offers evidence of the law in another jurisdiction or asks that judicial notice be taken thereof, "reasonable notice shall be given to the adverse parties either in the pleadings or otherwise."). Neither party contends that Pennsylvania law differs materially from Indiana law in the area of general contract interpretation. Thus, in this *de novo* review of the contract interpretation issue, we apply Pennsylvania law in accordance with the plain language of the agreement.

not delete, amend, alter or modify the text of the security interest language in Section 3. The agreement as finally amended repeats the provision authorizing NationsCredit to "use" the Reserve Account to "offset any shortage or default" in interest or principal payable. This provision, when read in conjunction with the security interest language of Section 3,[3] cannot be harmonized with the ownership language. Given that the parties' true intent cannot be ascertained from the four corners of the contract, the trial court did not err when it declined to construe the contract as a matter of law and denied NationsCredit's motion for summary judgment.[4]

### Issue Two: Ownership of Reserve Account

NationsCredit next asserts that the extrinsic evidence leads to the conclusion that NationsCredit, not Grauel, is entitled to the Reserve Account. In particular, NationsCredit argues that the ownership language in the Fourth and Fifth Amendments and the security interest language can be reconciled by considering its intentions in establishing the Reserve Account.

▇▇▇ The Third Amendment unambiguously gave NationsCredit only a security interest in the funds. The letter of intent, which preceded the Fourth Amendment, set forth the conditions of credit renewal but made no proposal to change the status of the Reserve Account. However, the Fourth Amendment itself included both ownership language and security interest language.

Later, the "Composite Form of Agreement," which purported to describe the terms of the Fifth Amendment, specifically reiterated the provision in Section 3 whereby Grauel "grants to [NationsCredit] a security interest in the Reserve Account...." The security interest language survived both amendments. Grauel also paid interest on the inventory purchase discounts held in the Reserve Account. On this record, the trial court could reasonably have concluded that the discounts retained by NationsCredit "are and at all times have been the property of Grauel."

Nonetheless, NationsCredit points to testimony that the company intended to own the Reserve Account from the outset and argues that the Fourth and Fifth Amendments simply "confirmed" its intent. We disagree. NationsCredit could have drafted the Third Amendment to provide that it owned the discounts. It did not. Nor did the Fourth and Fifth Amendments unambiguously establish NationsCredit's intent to own the Reserve Account. NationsCredit devotes a substantial part of its brief directing us to evidence supporting its position, including the business risk and administrative costs associated with its direct payment to inventory vendors and what it terms "objective evidence" inconsistent with Grauel's ownership of the funds. NationsCredit merely asks that we reweigh the evidence, which is not our prerogative on appeal. The trial court's conclusion that the Reserve Account belongs to Grauel is not clearly erroneous.[5]

---

**3.** NationsCredit directs us to Section 3, which gives NationsCredit a security interest in the Reserve Account "established pursuant to Section 2." NationsCredit then argues, "When the reserve language was moved from Section 2 to Section 5 by the Fifth Amendment, the parties did not correct the old Security Interest Language [in Section 3] because that language had been superseded in both the Fourth and Fifth Amendments by the Ownership Language." We reject that argument. Even after the Fifth Amendment, the text of the contract contains both security interest and ownership language.

**4.** NationsCredit also claims it was entitled to summary judgment on all other counts. We address the conversion cause of action separately. *See* Issue Three, *infra*. Regarding the claims for money had and received, unjust enrichment, breach of the duty of good faith and fair dealing and constructive fraud, the trial court did not

find for Grauel on those grounds. Any error in the court's denial of summary judgment on those grounds did not affect NationsCredit's substantial rights and, thus, does not constitute reversible error. *See* Ind. Trial Rule 61.

**5.** NationsCredit also claims it is entitled to recover attorney's fees and expenses of litigation from Grauel. Section 10G of the financing agreement states, *"As long as any indebtedness secured hereby remains unpaid,"* Grauel would pay reasonable attorney['s] fees and expenses incurred by NationsCredit "in perfecting, enforcing or attempting to enforce any of its rights" under the agreement. At the time Grauel filed suit, it was no longer indebted to NationsCredit. Further, we agree with the trial court that NationsCredit did not have a "right" to the Reserve Account. Thus, the cited provision is inapplicable, and the trial court did not err when it declined to award attorney's fees and expenses to NationsCredit.

### Issue Three: Criminal Conversion

Finally, NationsCredit asserts that the trial court's conclusion that it knowingly and intentionally retained control over funds belonging to Grauel is contrary to the law and to the evidence. Grauel brought a claim against NationsCredit under Indiana Code § 34–4–30–1 (repealed and recodified at IND.CODE § 34–24–3–1), which allows a person who has suffered a pecuniary loss as a result of certain criminal offenses, including criminal conversion, to bring a civil action to recover the loss. Criminal conversion occurs when a person "knowingly or intentionally exerts unauthorized control over property of another person." IND.CODE § 35–43–4–3. A party who proves criminal conversion by a preponderance of the evidence may recover damages in an amount not to exceed three times actual damages, costs of the action and reasonable attorney's fees. IND.CODE § 34–4–30–1.

Here, the trial court did not use the term "conversion" in its findings, conclusions and order. However, the court held:

NationsCredit's representatives understood the nature of a security interest as opposed to outright ownership; thus their testimony that NationsCredit held a security interest in property which it concurrently owned outright is not persuasive. The Court *finds that NationsCredit knowingly and intentionally withheld the inventory purchase discounts which belonged to Grauel after Grauel had fully satisfied its debts and obligations to NationsCredit.*

On appeal, both parties interpret this conclusion to mean that the trial court found NationsCredit liable for criminal conversion under Indiana Code § 35–43–4–3, and we review the issue on that basis.

■ Statutes which are punitive in nature are to be strictly construed under Indiana Code § 34–4–30–1. *See Baxter v. Lyttle,* 475 N.E.2d 675, 677 (Ind.1985); *Agristor Leasing v. McIntyre,* 793 F.Supp. 187, 191 (S.D.Ind.1992); *see also Midland–Guardian,* 499 N.E.2d at 801 ("This statute is largely a penal measure and as such it must be strictly construed."). In any criminal conversion action, criminal intent is an essential element which must be proven. *Baker v. R & R Constr., Inc.,* 662 N.E.2d 661, 666 (Ind.Ct.App.1996), *trans. denied.* It is this *mens rea* requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to reach. *Midland–Guardian,* 499 N.E.2d at 797.

■ The gravamen of the present action is contract construction. In its complaint, Grauel averred that "[a] controversy exists" regarding the parties' rights to the funds. The trial court found the contract was ambiguous concerning ownership of the Reserve Account, and we affirm that determination. A contract is ambiguous when it is reasonably susceptible of different constructions. *Sun Co.,* 708 A.2d at 878. It is this same ambiguity that precludes a finding of the required *mens rea.*

Grauel cites *Midland–Guardian,* 499 N.E.2d 792, to support its claim that "there is precedent in Indiana for holding a finance company civilly liable for knowingly and intentionally misappropriating a collateral Reserve Account." In that case, the Midland Guardian Company and its subsidiary, Midland Guardian Company of Indiana, Inc., (collectively "Midland") purchased installment contracts from United Consumers Club, Inc. ("UCC"), a franchisor. Midland paid an agreed upon price for the contracts less a certain percentage retained in a "holdback reserve fund." *Id.* at 794. Midland did not own the fund but had the right to charge back uncollectible contracts against it. *See id.* Midland refused to transfer the funds to UCC after termination of the parties' business relationship, and the trial court found it liable for criminal conversion. *Id.* at 794–95. This court upheld that finding. *Id.* at 798–99.

We agree with NationsCredit that *Midland–Guardian* is distinguishable on its facts. First, unlike here, Midland's contract was not facially ambiguous concerning ownership of the funds. *See id.* at 794. Second, Midland's only substantive explanation for non-payment of the funds originally owned by UCC was "an administrative oversight."

*Id.* at 798. Finally, Midland exhibited a pattern of unauthorized control over money belonging to others. *Id.* We approve the holding in *Midland–Guardian* but conclude that it does not control this case.

■■■■■ Grauel also argues that NationsCredit "slipped" the ownership language into the Amendments. We disagree with that characterization. Our supreme court has recently reiterated the well-established public policy of this state which favors the freedom of contract between private parties. *In re Marriage of Pond,* 700 N.E.2d 1130, 1136 (Ind. 1998); *Trimble v. Ameritech Publ'g, Inc.,* 700 N.E.2d 1128, 1129 (Ind. 1998). The freedom of contact rule applies even to ambiguous contracts. We presume that a contract is the freely bargained agreement of the parties. *See Trimble,* 700 N.E.2d at 1129. Moreover, one is bound to know the contents of the contract which he signs. *Pinnacle Computer Services, Inc. v. Ameritech Publ'g, Inc.,* 642 N.E.2d 1011, 1017 (Ind. Ct.App.1994).

Here, Grauel was represented by counsel and by an accountant when negotiating the ambiguous documents.[6] Yet, despite the fact that the Fourth and Fifth Amendments contained language that would have alerted a party to a substantial change in terms, Grauel executed the amendments which created an ambiguity regarding the discounts. Grauel cannot now disavow any responsibility for the ownership provision.

The trial court found that "NationsCredit's representatives understood the nature of a security interest as opposed to outright ownership." However, that conclusion is not equivalent to a finding of criminal conduct. While NationsCredit knowingly and intentionally exercised control over the Reserve Account, it cannot be said that its control was unauthorized when NationsCredit acted in accordance with a reasonable interpretation of the ambiguous contract.

■■■■■ The legislature did not intend to criminalize bona fide contract disputes. Nei-

ther the evidence nor the findings thereon support a conclusion that NationsCredit committed criminal conversion as that term is defined by Indiana Code § 35–43–4–3. Where a conclusion of law is clearly erroneous, it must be set aside. We direct the trial court to amend its findings and conclusions in accordance with this opinion.

Affirmed in part, reversed in part and remanded.

FRIEDLANDER and MATTINGLY, JJ., concur.

---

6. The record shows that here there was a disagreement within NationsCredit's hierarchy concerning whether to take the Reserve Account into income. The issue was settled in favor of transferring the funds to income. Language supporting that decision was contained in the ownership provisions of the Fourth and Fifth Amendments.