**Robert GILLIANA and Robert Gilliana d/b/a Gilliana Pool Service, Appellants–Defendants,**

v.

**John S. PANIAGUAS and Kathy Paniaguas, Appellees–Plaintiffs.**

No. 45A03–9805–CV–237.

Court of Appeals of Indiana.

April 16, 1999.

Rehearing Denied June 8, 1999.

J. Michael Katz, Katz & Brenman, Merrillville, Indiana, Attorney for Appellants.

Mitchell A. Peters, Gouveia & Miller, Merrillville, Indiana, Attorney for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Defendants Robert Gilliana and Robert Gilliana d/b/a Gilliana Pool Service (collectively "Gilliana") appeal the jury verdict finding in favor of John S. Paniaguas and Kathy Paniaguas (collectively "Paniaguases") for breach of contract and fraudulent control of the Paniaguases' property.

We affirm.

### ISSUES

Gilliana raises three issues for our review which we restate as follows:

1. Whether Gilliana's placement and construction of the Paniaguases' swimming pool was a material breach of contract or an oral modification.

2. Whether Kathy Paniaguas was a third party beneficiary of the contract with Gilliana.

3. Whether Gilliana's actions violated the Indiana crime victim's relief statute entitling the Paniaguases to relief under the statute. Ind.Code § 34–24–3–1.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment follow. The Paniaguases contracted with Gilliana for the construction of a swimming pool at their residence. The contract price was $15,500 for a 16 by 40 foot in-ground pool at a location in accordance with a site plan drawn by Kathy.

The Paniaguases elected to install a 16 by 32 foot pool, and the price was set at $14,500. When Gilliana began to install the pool, he located the pool in a different place than that originally specified by the Paniaguases. The

Paniaguases testified that Gilliana misrepresented to them that the pool could not be constructed in the location they chose. Gilliana testified that the Paniaguases orally agreed to modify the contract and install the pool in the location in which it was installed. The Paniaguases paid a total of $14,000 to Gilliana.

A disagreement arose between the parties and Gilliana discontinued construction of the pool and did not return to complete the project. The Paniaguases claim that Gilliana breached the pool contract by failing to install a swimming pool in accordance with the terms of the contract. Gilliana claims that he and the Paniaguases orally modified the contract.

The Paniaguases then contracted with another pool contractor who installed a 16 by 32 foot swimming pool at the location originally desired by the Paniaguases. The removal of the pool and installation of the new pool cost $16,678.

The Paniaguases claimed treble damages under the Indiana crime victim's relief statute. Ind.Code § 34–24–3–1. The jury found in favor of the Paniaguases in the sum of $40,000. Gilliana made a motion for judgment on the evidence and that motion was denied. The trial court entered its judgment on the verdict. This appeal ensued.

## DISCUSSION AND DECISION

### I. Breach of Contract

Gilliana argues that the evidence presented at trial did not establish that he materially breached his contract with the Paniaguases. Instead, Gilliana contends that by their words and conduct, the Paniaguases agreed to an oral modification of the original terms of the contract regarding the location and construction of the pool. Gilliana claims that he received oral reassurances that the Paniaguases wanted the pool constructed according to the modified standards and that he also received monetary consideration from the Paniaguases before he began digging. The Paniaguases counter with a contention that Gilliana breached the pool contract because the pool was not located and constructed in accordance with the site location survey

and site plan, their stakes and markings, and contrary to the permit for construction. Furthermore, after the Paniaguases had already paid Gilliana $14,000, on September 5, 1994, Gilliana abandoned construction of the pool and failed to perform his contractual obligations.

Gilliana and the Paniaguases could mutually modify their contract, and it is not always necessary to prove the oral modification of a contract because modification of a contract can be implied from the conduct of the parties. *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 220–221 (Ind.Ct.App.1987). However, questions regarding the modification of a contract are ones of fact, and are to be determined by the jury upon the evidence in each case. *Id.* at 221.

In the present case, after presentation of evidence and arguments of counsel, the jury returned a verdict in favor of the Paniaguases and against Gilliana in the sum of $40,000. However, the trial court withheld entry of judgment on the verdict pending Gilliana's motion for judgment on the evidence, or in the alternative remittitur or a new trial. Gilliana's motion was denied and the trial court entered judgment on the verdict. Thus, Gilliana essentially contends that the evidence was insufficient to support the jury's verdict. The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Nesvig v. Town of Porter*, 668 N.E.2d 1276, 1282–83 (Ind.Ct. App.1996). When we review the sufficiency of the evidence to support the trial court's judgment, we do not reweigh the evidence or judge the credibility of the witnesses. We consider only the evidence and the reasonable inferences from the evidence which supports the jury's verdict. *Hardsaw v. Courtney*, 665 N.E.2d 603, 606 (Ind.Ct.App.1996). Where the jury returns a verdict for the plaintiff in a civil action, and the trial court enters judgment on the verdict, we will not reverse unless there is no evidence or reasonable inferences from the evidence on an essential element of the plaintiff's case. *Id.*

The evidence most favorable to the jury's verdict reveals that on or about July 21, 1994, the Paniaguases entered into a swim-

ming pool contract with Gilliana for the construction of a 16 foot by 40 foot in-ground swimming pool to be installed in accordance with a site location survey and site plan at the Paniaguases residence.

The Paniaguases decided, however, that they did not like the location and angle that Gilliana had proposed, and Kathy notified Gilliana that they wished to proceed with the original proposal of a 16 foot by 32 foot pool installed at the location on Kathy's site plan, to which Gilliana replied "[n]o problem." (R. 610). Gilliana submitted a site survey to secure a building permit with the Crown Point Building Department that depicted the pool location at the rear of the property and parallel to the house. On the morning Gilliana came to dig for the swimming pool, he told Kathy that the pool could not go where she had it marked and that he was going to construct it at a different angle. Kathy informed Gilliana that she did not want the pool constructed at a different location. However, Gilliana partially installed a 16 foot by 32 foot pool at an angle close to the house rather than toward the rear of the property at an angle parallel to the house as depicted on the site plan sketch. When John asked Gilliana why the pool could not be placed where they wanted, Gilliana stated, "[t]rust me. I'm the pool expert. You'll have to defer to my judgment on this." (R. 373). Because the Paniaguases lacked experience and expertise regarding pool construction, they trusted Gilliana and relied on his expertise. Subsequently, the Paniaguases attempted to contact Gilliana to complete construction of the pool. However, Gilliana indicated that he would not complete the pool without a release from any liability and claimed that the location of the pool requested by the Paniaguases would result in a substandard product. On March 3, 1995, the Paniaguases' counsel attempted to contact Gilliana to complete construction of the pool, but Gilliana never responded. Gilliana, who had been paid $14,000, never completed the pool and never returned any money he had been paid. Therefore, the Paniaguases contacted a different swimming pool company to discuss construction of a pool in the location and at an angle that they desired. Frank Giberson (Giberson) of Caribbean Pools met with the Paniaguases and informed them that there was no reason that a swimming pool could not be installed in accordance with Kathy's site plan sketch. In fact, Giberson testified that the cost savings to Gilliana in placing the pool where he did was between $1,000 and $1,500, thereby increasing his profit under the contract.

Therefore, we find that the evidence most favorable to the verdict adequately reveals that there was no oral modification to the contract regarding the location and angle of the swimming pool. The trial court properly ruled that Gilliana breached the pool contract by failing to construct the pool in accordance with the location and angle specified by the site survey, site plan, the Paniaguases stakes and markings, and the building permit.

## II. Third Party Beneficiary

■ Gilliana contends that Kathy Paniaguas was not a third party beneficiary to the pool contract, and therefore was not a proper party to this lawsuit. Specifically, Gilliana argues that the contract language failed to clearly intend to impose a duty of performance on behalf of Kathy because she did not sign the contract and she is not mentioned anywhere in the contract as having separate duties owed to her by Gilliana. We disagree. We find that Kathy Paniaguas is a proper third party beneficiary.

■ A third party beneficiary contract exists when: (1) the parties intend to benefit the third party, (2) the contract imposes a duty on one of the parties in favor of the third party, and (3) the performance of the terms of the contract renders a direct benefit to the third party intended by the parties to the contract. *Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 995–996 (Ind. Ct.App.1998). Here, the evidence demonstrates that Kathy Paniaguas satisfied the requirements as a third party beneficiary to the swimming pool contract. The contract provides in relevant part:

This Agreement made this 21st day of July, 1994, between John and Kathy Paniaguas, herein called the "OWNERS", and Robert Gilliana, herein called the "CONTRACTOR."

* * * * *

WHEREAS, the Owners are desirous of having the Contractor install a SWIMMING POOL on the said real property owned by the Owners.... The Owners agree to purchase and the Contractor agrees to sell and install a SWIMMING POOL in an excavation on the Owners' property for the sum of fifteen thousand five hundred dollars ($15,500).

(R. 9). Although Kathy did not sign the contract, her name appears on the contract as an owner contracting with Gilliana. Furthermore, Kathy prepared the detailed site plan sketch which formed the basis of the contract and participated in the meetings and contract discussions with Gilliana regarding the construction of the pool. Therefore, the contract language reveals that Kathy, as an owner of the property, was intended to directly benefit from Gilliana's contractual duty to install a swimming pool on her property. Kathy Paniaguas was a third party beneficiary of the contract with standing to enforce its terms.

### III. *Indiana Crime Victim's Relief Act*

■ Gilliana maintains that he did not act in violation of the Indiana crime victim's relief statute.

The Indiana crime victim's relief act allows treble damages in certain civil actions by crime victims. The statute provides, in relevant part:

If a person suffers a pecuniary loss as a result of a violation of IND. CODE 35–43, IND. CODE 35–42–3–3, IND. CODE 35–42–3–4, or IND. CODE 35–45–9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.

(2) The costs of the action.

(3) A reasonable attorney's fee.

Ind.Code § 34–24–3–1.

■ In this case, the Paniaguases brought a complaint for damages under the Indiana crime victim's relief act pursuant to the criminal conversion statute, which provides that "[a] person who knowingly or in-tentionally exerts unauthorized control over property of another person commits criminal conversion." Ind.Code § 35–43–4–3. The Indiana crime victim's relief act allows a person who has suffered a pecuniary loss as a result of a violation of criminal conversion to bring a civil action to recover the loss. Unlike in a criminal trial, a claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant. *Squires v. Utility/Trailers of Indianapolis, Inc.*, 686 N.E.2d 416, 420 (Ind. Ct.App.1997). A criminal conviction for conversion is not a condition precedent to recovery in a civil action brought under the Indiana crime victim's relief act. *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct. App.1995). However, all elements of the alleged criminal act must be proven by the claimant. *Id.*

■ Gilliana claims that the Paniaguases failed to prove that he had the requisite intent under the criminal conversion statute to defraud them through control of their property. In any criminal conversion action, criminal intent is an essential element which must be proven. *Baker v. R & R Constr., Inc.*, 662 N.E.2d 661, 666 (Ind.Ct.App.1996). It is this mens rea requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to cover. *Midland–Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 795 (Ind.Ct.App.1986). Gilliana also contends that his actions do not fit the definition of criminal conversion because he did not exert unauthorized control over the Paniaguases' property.

Culpability, as a basis of criminal liability is defined as, a person engaging in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct "knowingly" if he is aware of a high probability that he is doing so. Ind.Code § 35–41–2–2. The statutory definition of exerting unauthorized control over the property of another person states in pertinent part:

(a) As used in this chapter, "exert control over property" means to obtain, take, carry, drive, lead away, conceal, abandon, sell,

convey, encumber, or possess property, or to secure, transfer, or extend a right to property.

(b) Under this chapter, a person's control over property of another person is "unauthorized" if it is exerted:

\* \* \* \* \*

(4). by creating or confirming a false impression in the other person;

(5) by failing to correct a false impression that the person knows is influencing the other person, if the person stands in a relationship of special trust to the other person;

Ind.Code § 35–43–4–1.

We find the case of *NationsCredit Commercial Corp. v. Grauel Enterprises, Inc.*, instructive for when criminal conversion occurs in a contract dispute. 703 N.E.2d 1072 (Ind.Ct.App.). In that case, this Court found that even though the parties' contract was ambiguous, the parties still had the freedom to contract, and were bound to know the contents of the contract which they signed. *Id.* at 1079. That case was a bona fide contract dispute about the ambiguity of the contract between sophisticated business entities, and it is this ambiguity of a contract that precludes a finding of the required mens rea for criminal conversion. *Id.* at 1078. NationsCredit, a commercial lender, acted upon its reasonable interpretation of an ambiguous contract, and did not act with criminal intent when it retained funds from Grauel. *Id.* The legislature did not intend to criminalize bona fide contract disputes. *Id.* Furthermore, in *NationsCredit,* NationsCredit did not retain unauthorized control over money belonging to others. *Id.* at 1079.

We find that this case is distinguishable from the facts of *NationsCredit.* The gravamen of the present action is not contract construction of an ambiguous contract between sophisticated business entities. Rather, this case involves a party (the Paniaguases), unfamiliar with the pool construction business, relying on the superior knowledge of a swimming pool contractor (Gilliana), who then misrepresented that the pool could not be located where the Paniaguases' wished. In the case at hand, we find that there was sufficient evidence for the jury to find that Gilliana knowingly or intentionally exerted unauthorized control over the Paniaguases property by creating and failing to correct a false impression that he could not construct the Paniaguases swimming pool in the location that they desired. Gilliana convinced the Paniaguases to change the location of the swimming pool because he could not construct it where they wanted it. Gilliana stated to the Paniaguases that he was the pool expert and that they were to trust him and defer to his judgment on this issue. However, the testimony of the second pool contractor revealed that there was no reason why the pool could not be located where the Paniaguases desired it. In fact, by constructing the pool where he did, Gilliana stood to save between $1,000 and $1,500 in excavation costs. Therefore, Gilliana created a false impression in the Paniaguases that the pool could not be located where they wished and Gilliana stood in a position of special trust to the Paniaguases because they believed him to be a pool expert. We find that the Paniaguases were entitled to treble damages pursuant to the Indiana crime victim's relief act because Gilliana exerted unauthorized control over their property.

## CONCLUSION

Gilliana's failure to place and construct the Paniaguases' swimming pool in accordance with Kathy's site plan sketch and the terms of the contract was a material breach of the contract. Kathy Paniaguas was a third party beneficiary of the contract with Gilliana. Gilliana's actions violated the Indiana crime victim's relief statute, entitling the Paniaguases to relief under the statute.

Affirmed.

NAJAM, J., and BAILEY, J., concur.