INNOVATIVE NETWORK
SOLUTIONS, INC.,
**Plaintiff**

v.

**ONESTAR COMMUNICATIONS,
LLC, et al., Defendants**

No. 03–79–P–C.

United States District Court,
D. Maine.

Sept. 12, 2003.

Ralph A. Dyer, Law Offices of Ralph A. Dyer, Portland, ME, for Innovative Network Solutions, Plaintiff.

Deirdre M. Smith, Drummond, Woodsum & MacMahon, Portland, ME, Joseph J Rodkey, Jr, Reed Smith LLP, Pittsburg, PA, for Onestar Communications LLC, Defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, Senior District Judge.

The United States Magistrate Judge having filed with the Court on July 25, 2003, with copies to counsel, his Recommended Decision on Motion to Dismiss (Docket Item No. 15) in the above-entitled matter; and the time for filing objections thereto having expired without any objections having been filed; *see* 28 U.S.C. § 636(b)(1); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and this Court concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and having determined that no further proceeding is necessary; it is **ORDERED** as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**.

(2) Defendant's motion to dismiss Counts II, VI, VII, and VIII of the Complaint are hereby **GRANTED**.

### RECOMMENDED DECISION ON MOTION TO DISMISS

DAVID M. COHEN, United States Magistrate Judge.

The defendants, OneStar Communications, LLC ("Communications") and OneStar Long Distance, Inc. ("LD"), move to dismiss Counts II, VI, VII and VIII of the complaint. Motion to Dismiss, etc. ("Motion") (Docket No. 9) at 1. I recommend that the court grant the motion.

### I. Applicable Legal Standard

The motion to dismiss invokes Fed. R.Civ.P. 12(b)(6). Motion at 1, 4. "In ruling on a motion to dismiss [under Rule 12(b)(6) ], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir.2001); *see also Wall v. Dion*, 257 F.Supp.2d 316, 318 (D.Me.2003).

### II. Factual Background

The complaint includes the following relevant factual allegations.

The plaintiff's principal place of business is located in Portland, Maine. Complaint (Docket No. 1) ¶ 2. Defendant Communications is organized under the laws of the state of Indiana and has its principal place of business in Evansville, Indiana. *Id.* Defendant LD is an Indiana corporation with its principal place of business also in Evansville. *Id.* Communications is the sole shareholder of LD. *Id.* ¶ 6. At some time prior to January 2001 LD opened a local sales office in Portland, Maine. *Id.* ¶ 17.

The plaintiff offers domestic and international telecommunications and related services to businesses and organizations. *Id.* ¶ 4. On or about May 10, 1999 the plaintiff and LD entered into a dealer agreement (the "OneStar Agreement") whereby the plaintiff was appointed as a non-exclusive sales representative to sell LD's products. *Id.* ¶ 7. The OneStar Agreement provides that it shall be construed under the laws of Indiana and includes a bonus plan. *Id.* ¶¶ 8–9. Prior to and after entering into this agreement, the plaintiff acted as a non-exclusive sub-agent of Pioneer Telephone Corporation, whose business was subsumed by LD in or about June 1999. *Id.* ¶ 10. On or about July 8, 1999 the plaintiff and LD agreed to treat the plaintiff's Pioneer accounts as direct accounts subject to the terms and conditions of the agreement and other arrangements made by LD and Pioneer. *Id.* After the OneStar Agreement came into effect, LD knew the identity of each of the plaintiff's customers and all aspects of the plaintiff's relationship with each of its customers. *Id.* ¶¶ 12–13. Within a year after execution of the OneStar Agreement, the plaintiff considered its business relationship with LD to be unsatisfactory. *Id.* ¶ 14.

On or about October 10, 2000 the plaintiff entered into a non-exclusive dealer agreement with CRG International d/b/a Network One, a telecommunications provider and competitor of LD. *Id.* ¶ 15. LD opened a sales office in Portland, Maine in order to compete directly with the plaintiff and other sales representatives in Maine, in part by providing more advantageous pricing and services. *Id.* ¶ 17. On or about March 7, 2001 LD announced the "acquisition" of Network One, although it only agreed to manage Network One's

business and never took ownership of Network One. *Id.* ¶ 18. At that time, Communications was formed as a holding company and sole owner of LD. *Id.* ¶ 19. The owners of LD continued to control LD through their ownership of Communications. *Id.*

On March 14, 2001 LD notified the plaintiff that its contract with Network One would be honored by LD. *Id.* ¶ 21. LD falsely represented that the plaintiff's contract with Network One had terminated as a result of the acquisition and that it would thereafter be working for LD on the terms and conditions set forth in its contract with Network One. *Id.* On March 8, 2001 LD terminated the OneStar Agreement for cause and without opportunity for cure. *Id.* ¶ 24. The plaintiff pressed LD for a more particularized statement of the grounds for termination, after which LD reversed its position and on May 7, 2001 reinstated the plaintiff as a sales representative, although it refused to pay the plaintiff residual commissions for sales made prior to May 1, 2001. *Id.* ¶ 26.

After reinstatement of the OneStar Agreement, the plaintiff notified LD that more than 500 of its established accounts had disappeared from the monthly commission statement. *Id.* ¶ 27. The plaintiff demanded an accounting, but none was provided. *Id.* On June 11, 2001 LD advised that it would pay the plaintiff retroactive commissions regarding those accounts for six months upon request. *Id.* ¶ 28. The plaintiff made such a request but no retroactive commissions were paid. *Id.* On and after June 11, 2001 LD solicited the plaintiff's customers directly by offering services and pricing which it did not make available to the plaintiff to sell to these customers. *Id.* ¶ 29. Customers that accepted these solicitations were reclassified as house accounts and no commissions were paid to the plaintiff thereafter. *Id.* A similar practice was followed by

Network One's in-house sales force. *Id.* ¶ 30.

On December 7, 2001 LD informed all Network One sales representatives that Network One was experiencing financial difficulties and was likely to discontinue its business. *Id.* ¶ 31. It offered those sales representatives a direct contract with LD by which accounts would be transferred to LD. *Id.* The plaintiff did not accept this offer because the arrangement offered was less advantageous than its existing contractual relationship with LD. *Id.* ¶ 32. In January 2002 the plaintiff determined that 138 of its largest Network One accounts had been converted to house accounts, terminating commission payments. *Id.* ¶ 33. Network One acknowledged that 54 of the accounts had been so converted. *Id.* The plaintiff demanded an accounting, which has not been provided. *Id.*

On or about March 29, 2002 LD directed all Network One sales representatives to transfer immediately all of their Network One accounts to LD. *Id.* ¶ 34. The plaintiff complied. *Id.* On May 3, 2002 LD terminated the OneStar Agreement without notice and without stated cause. *Id.* ¶ 37. The plaintiff was entitled to monthly commissions after the termination of more than $50,000 per month but payment has been reduced to less than $1,000 per month. *Id.* ¶¶ 38–39. LD has refused to provide an accounting. *Id.* ¶ 39.

### III. Discussion

#### A. Count II

Count I of the complaint alleges breach of the OneStar Agreement by both defendants. Complaint ¶¶ 42–49. Count II alleges breach of LD's "duty under Indiana law to perform its contract in good faith and with fair dealing." *Id.* ¶ 56. The defendants contend that Count II fails to state a claim against Communications and

that LD has no such duty under Indiana law. Motion at 7–9.

■ The parties agree that Indiana law applies to this count by virtue of the terms of the contract. *Id.* at 5–6; Plaintiff's Objection to Motion for Dismissal, etc. ("Objection") (Docket No. 12) at 2–7. *See* document with heading "OneStar Confidential" ("OneStar Agreement") (Exh. A to Complaint) ¶ 16.6 ("This Agreement shall be construed under the laws of Indiana.").[1] The plaintiff contends that exceptions to Indiana's general rule barring claims based on an implied contractual duty of good faith and fair dealing apply to its claims in Count II. Objection at 8–10. It is incorrect.

In *First Fed. Sav. Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600 (Ind. 1990), the Supreme Court of Indiana held that the Indiana courts

> are bound to recognize and enforce contracts where the terms and the intentions of the parties can be readily determined from the language in the instrument. It is not the province of courts to require a party acting pursuant to such a contract to be "reasonable," "fair," or show "good faith" cooperation.

*Id.* at 604. The plaintiff does not allege that the contract at issue in this case is ambiguous or that its terms are inconsistent. Instead, it relies on an opinion of the United States District Court for the Southern District of Indiana, *Prudential Ins. Co. of Am. v. Crouch*, 606 F.Supp. 464 (S.D.Ind.1985), issued five years before *First Federal*, and two subsequent decisions of the Indiana Court of Appeals. Objection at 8–9. The federal court decision is inapposite because it predates the

Indiana Supreme Court's holding. The appeals court in *Weiser v. Godby Bros., Inc.*, 659 N.E.2d 237 (Ind.App.1995), the first of the state cases cited by the plaintiff, dealt with an employment contract; the appeals court noted that the implication of a covenant of good faith and fair dealing under Indiana case law was limited to insurance and employment contracts. *Id.* at 239–40. The contract at issue here is neither an employment nor an insurance contract. In *Hamlin v. Steward*, 622 N.E.2d 535 (Ind.App.1993), the other decision cited by the plaintiff, the court specifically held that "[w]e do not hold that a general duty of good faith and reasonableness is implied in every contract," and limited its holding to the factual situation presented by the case, stating:

> In this case, we must infer good faith in the performance of the condition in order to give meaning to the intention of the parties. The underlying debt is owed, and the only issue is when the Note is due. Thus, good faith is implied because fulfillment of the condition rests with the promisor, and without good faith, the mere promise to pay the Note subject to a condition precedent to be performed by the promisor would be an illusory promise.

*Id.* at 540–41 (citation omitted). The plaintiff contends that LD's contractual promise in this case is similarly illusory "because payment is wholly within the control of [LD] and [LD] sought to avoid payment by inequitable, bad faith conduct." Objection at 9. The same could be said of any contract pursuant to which one party has an obligation to pay the other. The important factor in the *Hamlin* case was that the promisor's duty to pay was

---

1. The contract is attached to the complaint and mentioned frequently therein although not expressly incorporated. Its authenticity is not disputed by the parties and it is central to

the plaintiff's claim. Accordingly, it may be considered by the court in connection with the motion to dismiss. *Alternative Energy*, 267 F.3d at 33.

dependent on a condition precedent that was wholly within the control of the promisor. *See Pardieck v. Pardieck,* 676 N.E.2d 359, 364 n. 3 (Ind.App.1997) (discussing *Hamlin* and stating that "[a]n illusory promise is a promise which by its terms makes performance entirely optional with the promisor"). The complaint in this case does not allege the existence of any such condition precedent in the contract at issue and the plaintiff does not identify any such condition precedent in its memorandum of law.

Count II should be dismissed.

## B. Count VI

■ Count VI alleges conversion of commission income. Complaint ¶¶ 86–89. The defendants contend that this count as alleged does not state a claim against Communications and that Indiana law does not recognize a conversion claim when the claim is based in a breach of contract or failure to pay a debt. Motion at 10–12. The plaintiff does not address the first argument and vigorously disputes the second, asserting that Maine law applies to the claim and that "wrongfully taking and keeping money received ... pursuant to the contract for the benefit of Innovative constitutes conversion" because it "would have been a conversion" if LD had stolen the contract itself "from the rightful possession of Innovative." Objection at 10–11.[2]

■ It is not necessary to determine whether Maine or Indiana law applies to this claim because Count VI must be dismissed under either. In Indiana, civil claims for conversion are governed by the definition of criminal conversion. *NationsCredit Commercial Corp. v. Grauel Enters., Inc.,* 703 N.E.2d 1072, 1078 (Ind.App.

1998). The criminal conversion statute "was not intended to reach" breach of contract or failure to pay a debt. *Id.* "The legislature did not intend to criminalize bonafide contract disputes." *Id.* at 1079. *See also Stevens v. Butler,* 639 N.E.2d 662, 667 (Ind.App.1994) (real estate agent's refusal to refund purchasers' deposits does not support claim for conversion). The Maine Law Court has refused to recognize a cause of action in conversion for insurance premiums paid to an agent pursuant to contract, noting that "[m]ere failure to deliver such property in specie on demand would not be technical conversion, nor would the refusal to pay over its equivalent be conclusive evidence of conversion in the sense of the law of trover, but it might be the ground for an action of assumpsit." *Hazelton v. Locke,* 104 Me. 164, 71 A. 661, 663 (1908). *See Paffhausen v. Balano,* 708 A.2d 269, 271 n. 3 (Me.1998) (writ of assumpsit is "essentially contractual"). The Law Court apparently has not had the occasion to revisit this issue in the subsequent 95 years, but the point remains the same. The plaintiff has a contract remedy for its claimed damage, which it has asserted in this case. Maine law does not recognize a duplicative tort remedy.

Count VI should be dismissed.

## C. Count VII

■ Count VII seeks damages under 10 M.R.S.A. § 1343. Complaint ¶¶ 90–94. The defendants contend that the statute does not apply to them or to the plaintiff. Motion at 12–13. The statute provides:

If a contract between a sales representative and a principal is terminated, the principal shall pay to the sales representative all commissions accrued under the contract within 30 days after the

2. The plaintiff refers to this count as "Count IV," Objection at 10–11, but it is clear from the context of its argument that it means to refer to Count VI, the subject of the defendants' motion.

effective date of that termination. Any provision of any contract between a sales representative and a principal that purports to waive any provision of this chapter is void.

10 M.R.S.A. § ·1343. A principal who fails to comply with this section is liable for punitive damages and attorney fees. 10 M.R.S.A. § 1344(1). A "principal" is defined for purposes of section 1343 in part as a business entity "that does not have a permanent or fixed place of business in this State" and "[m]anufactures, produces, imports or distributes a product for wholesale." 10 M.R.S.A. § 1341(2). A "sales representative" is defined, in part, as a person who "[c]ontracts with a principal to solicit orders for the purchase at wholesale of the principal's product." 10 M.R.S.A. § 1341(3). The defendants contend that the complaint demonstrates that LD is not a "principal" under the statute because it is alleged to have an office in Portland, Maine and because it is not alleged to deal in a product for wholesale. Motion at 12–13. They also assert that the complaint fails to allege facts sufficient to establish that the plaintiff is a "sales representative" under the statute because there is no allegation that it contracted with LD to solicit orders for purchase at wholesale. *Id.* at 13.

The plaintiff responds that its allegation that "OneStar opened a local office in Portland staffed with salaried sales persons" at an undetermined time prior to January 2001, Complaint ¶ 17, does not allow one to draw the conclusion that this office is "fixed" or "permanent." Objection at 12. To the contrary, the allegation is consistent only with a conclusion that the office is "fixed." Even if that were not the case, the complaint also fails to allege that the "product" the plaintiff contracted to sell for LD was "a product for wholesale" or that the plaintiff contracted to solicit orders for the purchase "at wholesale" of

LD's product. The plaintiff relies in this regard on a letter "identifie[d]" in paragraph 30 of the complaint. *Id.* at 12. No letter is mentioned in paragraph 30 of the complaint. A copy of this letter is attached to the plaintiff's objection and the plaintiff represents that it "will be attached to an Amended Complaint to be submitted contemporaneously with this objection." *Id.* No amended complaint has been submitted by the plaintiff. The letter accordingly may not be considered in connection with the motion to dismiss. Even if the letter could be considered, however, it does not establish that the agreement at issue provided that the plaintiff would solicit orders "at wholesale." It establishes precisely the opposite. It notifies agents of a change in policy allowing them to solicit existing Network One wholesale customers "for the purpose of converting them to Network One retail customers." Letter dated June 22, 2001, Exh. A to Objection. Clearly, agents such as the plaintiff were both before and after the date of the letter soliciting only retail customers.

The parties do not address the role of Communications, against which Count VII is also alleged, but, even if it had contracted with the plaintiff, the fact that the complaint fails to allege that the plaintiff was engaged in solicitation of wholesale customers for either defendant means that the count must be dismissed against both defendants.

## D. Count VIII

Count VIII of the complaint alleges "breach of trust" "based on breach of fiduciary duty and unjust enrichment." Complaint ¶¶ 95–100. The defendants contend that Communications is entitled to dismissal of this count because the complaint fails to allege any basis for the existence of a fiduciary relationship between it and the

plaintiff and that LD is entitled to dismissal of this count because Indiana law prohibits a party from relying on a contractual relationship to create a fiduciary duty. Motion at 13–16. The plaintiff argues in response that Maine law governs this claim, that a trust relationship is implied in the contract and the parties' course of conduct, that the relationship of the parties to the contract was so unequal that a confidential relationship giving rise to a fiduciary duty may be implied and that a claim for unjust enrichment may be pursued because "a fact finder may find that no contract exists." Objection at 12–14. None of these arguments responds to the defendants' argument concerning Communications, and dismissal of Count VIII as to that defendant therefore is warranted.

 Again, it is not necessary to determine whether Maine or Indiana law applies to this claim against LD because it fails under either. Under Indiana law, "[c]ontractual agreements do not give rise to a fiduciary relationship creating a duty." *Morgan Asset Holding Corp. v. CoBank, ACB,* 736 N.E.2d 1268, 1273 (Ind.App. 2000). *See also Comfax Corp. v. North Am. Van Lines, Inc.,* 587 N.E.2d 118, 125–26 (Ind.App.1992). While a confidential relationship may arise under Indiana law when dominant and subordinate parties are involved, *id.,* the complaint cannot be read to allege that LD was so dominant as to create such a relationship in this case. The plaintiff points to no such allegations in its memorandum of law and the complaint is devoid of references to the relative positions of the parties to the contract.[3] Finally, Indiana law provides that "recovery cannot be grounded on a claim of unjust enrichment where a contract controls the rights of the parties." *Bayh v.*

*Sonnenburg,* 573 N.E.2d 398, 409 (Ind. 1991); *see also DiMizio v. Romo,* 756 N.E.2d 1018, 1025 (Ind.App.2001). While a plaintiff may certainly allege alternative theories for recovery, it must allege facts in its complaint sufficient to support each theory. The complaint in this case cannot reasonably be read to include assertions that there was no contract governing the conduct of the parties. Indeed, the allegations specific to Count VIII refer only to the "contractual ... responsibility" of LD. Complaint ¶ 97. Accordingly, the plaintiff's final argument against dismissal of this count also fails under Indiana law.

 Under Maine law, the "salient elements" of a fiduciary relationship are (1) the actual placing of trust or confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue. *Stewart v. Machias Sav. Bank,* 762 A.2d 44, 46 (Me.2000) (citation omitted) (holding that existence of creditor-debtor relationship does not establish fiduciary relationship). The complaint in this case fails to allege either element. *See Leighton v. Fleet Bank of Maine,* 634 A.2d 453, 457–58 (Me.1993). A complaint alleging breach of a fiduciary duty "is required to set out specific facts regarding the nature of the relationship alleged to have given rise to a fiduciary duty in order to determine whether a duty may exist at law." *KeyBank Nat'l Ass'n v. Sargent,* 758 A.2d 528, 536 (Me.2000) (internal quotation marks and citation omitted). The complaint in this case cannot be read, however indulgently, to meet this standard.

 To the extent that the plaintiff contends that the commissions at issue are subject to a constructive trust, Objection

---

**3.** This omission disposes of the plaintiff's argument on this point under Maine law as well.

at 13–14, that equitable remedy is not available when a remedy at law – for breach of contract – is available. Under Maine law, like Indiana law, a contractual relationship between parties precludes recovery by one of those parties for unjust enrichment. *Ingram v. Rencor Controls, Inc.*, 256 F.Supp.2d 12, 23 (D.Me.2003). As I have already discussed, the complaint fails to allege sufficient facts to present unjust enrichment as an alternative theory of recovery in this case.

Under either Maine or Indiana law, the defendants are entitled to dismissal of Count VIII.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss Counts II, VI, VII and VIII of the complaint be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

July 25, 2003.