**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 13 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT OWEN VEGELER**
Vegeler Law Office, LLC
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**PATRICK L. PROCTOR**
Eilbacher Fletcher, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AUTO LIQUIDATION CENTER, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1111-SC-553 |
| | ) | |
| MCKESHA BATES, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Stanley A. Levine, Judge
The Honorable Jerry L. Ummel, Magistrate
Cause No. 02D01-1104-SC-5315

**June 13, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Auto Liquidation Center, Inc., ("ALC") appeals the small claims court's judgment in favor of McKesha Bates. We affirm and remand.

## Issues

ALC raises three issues, which we consolidate and restate as:

> I. whether the small claims court erred by finding for Bates on her breach of contract claim and on ALC's breach of contract counterclaim; and

> II. whether the small claims court properly found that ALC committed criminal conversion.

On cross-appeal, Bates argues that she is entitled to appellate attorney fees.

## Facts

On March 8, 2011, Bates visited ALC, a used car dealership, and found a 1995 Oldsmobile Regency that she wanted to purchase. Bates drove the vehicle and found problems with the battery and brakes. Mike Zojaji, president and owner of ALC, told Bates that ALC would fix those issues. Bates purchased the vehicle for $4,473.00 and made a down payment of $1,700.00. Bates entered into a Retail Installment Contract and Security Agreement ("Agreement") and purchased an additional Vehicle Protection Plan that warranted the vehicle for six months or 6,000 miles ("Warranty"). Under the Agreement, Bates was required to make weekly $60.00 payments beginning on March 16, 2001.

Bates did not take the vehicle when she purchased it because ALC was supposed to repair the vehicle. On March 16th, Zojaji told Bates that the vehicle would be ready on

2

March 18th and that she should make her first payment on that day. On March 18th, Bates went to ALC, made her payment, and picked up the vehicle.

On March 19th, Bates had trouble starting the vehicle. On March 20th, she could not start the vehicle and had to get a jump start. On March 25th, Bates made her next payment. She continued having trouble starting the vehicle, and she called ALC on March 29th. Zojaji told Bates to take the vehicle to Auto Electric. Bates did so and was told that the battery was "no good." Tr. p. 20. Bates called Zojaji, and Zojaji said to bring the vehicle to ALC for a new battery. Bates returned to ALC on March 29th, and a mechanic told her that the heating coil was also "going out" and that ALC needed to keep the vehicle to make the repairs. Id. at 21. Bates called on March 30th, and Zojaji said that the vehicle was not ready and told Bates not to call him anymore. Bates reminded him that her next payment was due on April 1st, and Zojaji said to wait until she picked up the vehicle to make the payment. On April 1st, Bates obtained a $60 money order to make the payment.

Because she still had not heard from ALC, Bates had her father call ALC on April 5th. Zojaji told Bates's father that he had been trying to contact Bates.[1] Bates called ALC but was unable to talk with Zojaji. The receptionist asked for Bates's cell phone number again. Bates said that Zojaji already had her name and number and hung up the phone. Bates and her father then drove ALC to talk to Zojaji. Zojaji told Bates that she "couldn't

---

[1] Bates had gotten a new cell phone number, and Bates and her father testified that they gave the number to ALC. Although ALC claimed that it had called Bates's references from her credit application in an attempt to contact her, Bates presented evidence that ALC had not called any of the references to contact her.

3

get the car back because he felt like he was being lied to and that he [didn't] like [her] anymore so he was repossessing [the] vehicle." Id. at 33. Bates attempted to make her payment with the money order, but Zojaji refused to accept it, give her the vehicle, or refund her down payment and two payments.

On April 7, 2011, Bates filed a small claims court complaint against ALC. She later filed an amended complaint for breach of contract and criminal conversion. ALC filed a counterclaim for breach of contract. After a trial, the small claims court entered the following sua sponte findings of fact and conclusions thereon:

9.    After April 1st both parties testified that they attempted to contact each other. Finally, on April 5th, the Plaintiff went to Defendant's lot with her father to pick up the vehicle. She testified that she tendered the payment of $60.00 but the parties got into a verbal altercation and the Defendant refused to allow the Plaintiff to take her vehicle. The Plaintiff presented a copy of a money order to the Court in the amount of $60.00 that she obtained on April 1, 2011. She testified that this was the money order she tendered to the Defendant.

10.   The Defendant denied that the Plaintiff tendered payment.

11.   The Defendant offered into evidence a letter dated March 28, 2011 and a letter dated April 5, 2011. The Plaintiff testified that she did not receive either of the letters.

12.   The letter dated March 28th stated the Plaintiff's vehicle was repaired on March 25, 2011. Both parties agree that the Plaintiff actually visited Defendant's store on March 25th and made a payment. The Plaintiff testified that she drove her vehicle that day and it remained in her possession.

4

13. The Court is faced with conflicting testimony regarding nearly every key issue in this case.

14. The Court finds that on or about April 5, 2011 the Plaintiff visited Defendant's store and tendered her $60.00 payment to attempt to pick up her vehicle. The Court also finds that the Defendant improperly refused to allow the Plaintiff to take her vehicle and never offered to return any payments made by Plaintiff.

15. By refusing to allow the Plaintiff to pick up the vehicle the Defendant converted Plaintiff's payments of $1,820.00. The Plaintiff is entitled to recover treble damages in the amount of $5,460.00 along with reasonable attorney fees which the Court finds would be in excess of $600.00 making the judgment amount a sum in excess of the Small Claims jurisdictional limit. For these reasons the Plaintiff is entitled to recover a judgment against the Defendant in the sum of $6,000.00.

Judgment for the Plaintiff against the Defendant in the sum of $6,000.00. Judgment for Plaintiff on Defendant's counter-claim. Costs to Defendant.

Appellant's App. p. 11. ALC now appeals.

**Analysis**

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Here, the small claims court entered detailed special findings and conclusions sua sponte. "Although Indiana Trial Rule 52(A), which governs the effect of findings by the trial court, does not apply in small claims proceedings, . . . the small claims court's findings here, while not binding, are nevertheless helpful to this Court in reviewing the judgment." Kalwitz v. Kalwitz,

5

934 N.E.2d 741, 748 (Ind. Ct. App. 2010) (citing Bowman v. Kitchel, 644 N.E.2d 878, 878 (Ind. 1995)).

The clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the small claims court to assess witness credibility. Trinity Homes, LLC v. Fang, 848 N.E.2d 1065, 1067 (Ind. 2006). This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. Id. at 1067–68. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Kalwitz, 934 N.E.2d at 748.

## I. Breach of Contract

ALC first argues that the small claims court erred by finding for Bates on her breach of contract claim and on ALC's breach of contract counterclaim. The elements of a breach of contract action are the existence of a contract, the breach thereof, and damages. Hawa v. Moore, 947 N.E.2d 421, 426 (Ind. Ct. App. 2011). ALC argues that Bates breached the Agreement by failing to make the April 1st payment, refusing to provide current contact information, abandoning the vehicle at ALC's property, refusing to "deal appropriately with ALC," and failing to respond to a letter sent to her on March 28, 2011. Appellant's Br. p. 20.

Although the Agreement requires Bates to make weekly payments and to keep the vehicle in her possession, ALC cites no contractual provisions in the Agreement

6

requiring Bates to keep ALC informed of her cell phone number, "deal appropriately" with ALC, or respond to the alleged March 28th letter.[2] Furthermore, each of these allegations was disputed by Bates. Bates testified that she provided ALC with her new cell phone number, that ALC at all times had contact information for her, that she offered to make the April 1st payment but Zojaji refused to accept the payment, that Zojaji refused to give her the vehicle, and that she never received the March 28th letter. The small claims court found Bates more credible than ALC's witnesses and found that ALC, not Bates, breached the Agreement. ALC's argument is "nothing more than an invitation for us to reweigh the evidence and assess the credibility of witnesses, which we cannot do." Benge v. Miller, 855 N.E.2d 716, 719-20 (Ind. Ct. App. 2006). The small claims court found that ALC, not Bates, breached the Agreement, and there is evidence in the record to support that determination. The small claims court did not err by granting judgment in favor of Bates on the breach of contract claim and counterclaim.

## II. *Criminal Conversion*

Next, ALC argues that the small claims court erred by entering judgment in favor of Bates on the criminal conversion claim. "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." Ind. Code § 35-43-4-3. The criminal conversion statute includes two levels of criminal intent—knowingly or intentionally. "A person engages in conduct

---

[2] ALC contends that the credit application filled out by Bates required her to provide contact information. Clearly, Bates had to provide contact information to obtain financing, but ALC cites no authority for the proposition that the credit application or the Agreement required Bates to continually update her contact information.

'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b).

The Indiana Crime Victim's Relief Act, Indiana Code Section 34-24-3-1, (the "Act") allows a person who has suffered a pecuniary loss as a result of a criminal conversion to bring a civil action to recover the loss. Benaugh v. Garner, 876 N.E.2d 344, 349 (Ind. Ct. App. 2007), trans. denied. The Act allows a person to recover up to three times the loss, costs of the action, reasonable attorney fees, and other miscellaneous costs. Am. Heritage Banco, Inc. v. McNaughton, 879 N.E.2d 1110, 1116 (Ind. Ct. App. 2008); see I.C. § 34-24-3-1. "Unlike in a criminal trial, a claimant need only prove by a preponderance of the evidence that the defendant committed the criminal act." Benaugh, 876 N.E.2d at 349. A criminal conviction for conversion is not a condition precedent to recovery in a civil action brought under the Act. Id. However, the claimant must prove all of the elements of the alleged criminal act. Id.

ALC argues that the Act requires "more than a breach of contract" and there is "no clear evidence of exerting unauthorized control over property of another." Appellant's Br. p. 23. In the criminal conversion context, we have held that criminal intent is an essential element to the offense that must be proven. NationsCredit Commercial Corp. v. Grauel Enterprises, Inc., 703 N.E.2d 1072, 1078 (Ind. Ct. App. 1998), trans. denied. "It is this mens rea requirement that differentiates criminal conversion from the more innocent breach of contract or failure to pay a debt situation that the criminal conversion statute was not intended to reach." Id. "The legislature did not intend to criminalize

8

bona fide contract disputes." Id. at 1079. "[W]e normally regard a finding of criminal intent as the sort of determination requiring intervention by a fact-finder. . . ." White v. Indiana Realty Associates II, 555 N.E.2d 454, 458 (Ind. 1990).

Bates was required to show by a preponderance of the evidence that ALC knowingly or intentionally exerted unauthorized control over her property. The small claims court found that ALC "improperly refused to allow [Bates] to take her vehicle and never offered to return any payments made by [Bates]" and that "[b]y refusing to allow [Bates] to pick up the vehicle [ALC] converted [Bates's] payments of $1,820.00." Appellant's App. p. 11. Bates testified that, on April 5th, she went with her father to ALC because she needed her car back. Zojaji told Bates that she "couldn't get the car back because he felt like he was being lied to and that he [didn't] like [her] anymore so he was repossessing [the] vehicle." Tr. p. 33. Bates attempted to make her payment with the money order, but Zojaji refused to accept it, give her the vehicle, or refund her down payment and two payments.

ALC argues that this is a case of mere breach of contract, rather than a criminal conversion. However, based on Bates's testimony, which the small claims court found credible, ALC had no reasonable basis for repossessing her vehicle. The small claims court found that ALC had criminal intent, and there is evidence to support that determination. We cannot reweigh the evidence or judge the credibility of the witnesses. As a result, we cannot say that the small claims court erred by finding that ALC

committed criminal conversion or that the small claims court erred by awarding damages to Bates pursuant to the Act.[3]

### III. *Appellate Attorney Fees*

On cross-appeal, Bates argues that she is entitled to appellate attorney fees pursuant to the Act or Indiana Appellate Rule 66(E) for ALC's filing of a frivolous appeal. We begin by addressing Bates's argument that she is entitled to appellate attorney fees under the Act. Bates is correct that a plaintiff is entitled to attorney fees, including appellate attorney fees, when he or she prevails under the Act. Benge, 855 N.E.2d at 722. However, Bates properly notes that she has already been awarded $6,000.00, which is the jurisdictional limit for small claims actions. See I.C. § 33-29-2-4 ("The small claims docket has jurisdiction over . . . [c]ivil actions in which the amount sought or value of the property sought to be recovered is not more than six thousand dollars ($6,000).").

Bates argues that we can award appellate attorney fees even though the judgment amount would exceed $6,000.00. Bates relies on Hill v. Davis, 850 N.E.2d 993, 998 n.7 (Ind. Ct. App. 2006), where we held that "an award of attorney's fees, like costs, is ancillary to the 'amount sought,' . . . and, therefore, is not constrained by the jurisdictional limitation." Bates does concede that we reached the opposite result in Pinnacle Properties v. Saulka, 693 N.E.2d 101, 106 n.5 (Ind. Ct. App. 1998), trans.

---

[3] ALC seems to argue that Bates's damages were only the value of the vehicle minus the unpaid payments. ALC cites no authority for this argument and makes no cogent argument, and the issue is waived. See Nealy v. Am. Family Mut. Ins. Co., 910 N.E.2d 842, 849 (Ind. Ct. App. 2009) (holding that the failure to provide citation to authority and cogent reasoning results in waiver of the argument on appeal), trans. denied.

denied, where we held that "the total amount of the judgment, apart from court costs, must not exceed" the jurisdictional limits and that the statute did "not distinguish between damages and attorney's fees in setting the total jurisdictional amount recoverable . . . ."[4]

In its reply brief, ALC argues that "[a]ppellate fees may be awarded under [the Act], but should not be awarded under Appellate Rule 66(E), 67(B) or I.C. § 34-52-1, et seq." Appellant's Reply Br. p. 5. ALC makes no attempt to address the jurisdictional amount issue or to argue that Saulka is correct and not Hill, and apparently concedes that appellate attorney fees may be awarded to Bates under the Act. See Popovich v. Danielson, 896 N.E.2d 1196 1204 n.5 (Ind. Ct. App. 2008) (applying the prima facie error standard where a party failed to address an argument raised on appeal), trans. denied. Under these circumstances and based on Hill, we conclude that Bates is entitled to appellate attorney fees, and we remand for the small claims court to calculate the appellate attorney fees owed.

## Conclusion

The small claims court properly found for Bates on her breach of contract and criminal conversion claims and on ALC's breach of contract counterclaim. Further, Bates is entitled to appellate attorney fees, and we remand for the small claims court to calculate those fees. We affirm and remand.

Affirmed and remanded.

FRIEDLANDER, J., and MAY, J., concur.

---

[4] Indiana Small Claims Rule 11(B) provides that the party recovering judgment shall recover costs regardless of the amount.