# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**BRYAN LEE CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JOSPEH G. BOMBAGETTI**
Kelly Law Office
Crown Point, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

FILED

Nov 07 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

DENNIS LARSON, ROSE REAL ESTATE, INC., )
and DIVERSIFIED COMMERCIAL REAL )
ESTATE, )
         )
     Appellants-Defendants, )
         )
          vs. )    No. 45A04-1112-CC-656
         )
PETER N. KARAGAN, )
         )
     Appellee-Plaintiff. )
         )
_____ )
ROSE REAL ESTATE, )
         )
     Appellant/Counter-Plaintiff, )
         )
          vs. )
         )
PETER N. KARAGAN, )
         )
     Appellee/Counter-Defendant. )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Elizabeth F. Tavitas, Judge
The Honorable Thomas P. Hallett, Magistrate
Cause No. 45D03-0812-CC-1585

**November 7, 2012**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Peter Karagan sued Dennis Larson, Rose Real Estate, and Diversified Commercial Real Estate (collectively, "Larson") for breach of contract and conversion. Karagan moved for summary judgment and, after Larson did not respond to the motion, the court granted summary judgment for Karagan. On appeal, Larson argues genuine issues of fact precluded summary judgment and Karagan was not entitled to treble damages. On cross-appeal, Karagan argues he was entitled to prejudgment interest. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Karagan went to work for Dennis Larson's real estate companies in September 2005. There was no written employment agreement, but the parties orally agreed Karagan would be paid seventy-five percent of the gross commissions Larson received for transactions Karagan procured.[1] Karagan left employment with Larson on December 26, 2007. Larson did not pay Karagan the remaining commissions owed him, and Karagan sued for breach of contract. He moved for summary judgment, and Larson did not respond to his motion. The trial court granted summary judgment for Karagan. It denied Larson's motion to correct error.

Karagan then submitted two Requests for Admission of Fact, neither of which Larson answered. The trial court granted Karagan's motions that the requests be deemed admitted. The trial court held a damages hearing, where Larson filed a motion to permit withdrawal of

---

[1] The trial court so found. Karagan refers in his affidavit to "an oral compensation agreement wherein I received 75% of the gross commissions generated on all transactions in which I was listed as the associate broker, sales agent, leasing agent, or listing agent." (App. at 77.) Larson, in an interrogatory, said in reference to the "rate of compensation [Karagan] was to receive" that he and Karagan "verbally agreed to 75% of real estate commission earned and collected on behalf of the company while he was licensed here." (*Id*. at 65.)

admissions. The trial court permitted withdrawal of Larson's second admission number ten.[2]

After a subsequent damages hearing, the trial court found Karagan was entitled to treble damages and awarded him $177,612.50 plus costs and future commissions Larson would receive on certain transactions. It denied Karagan's request for prejudgment interest.

## DISCUSSION AND DECISION

The standard of appellate review of a summary judgment motion is the same as that used in the trial court. *Hardy v. Hardy*, 963 N.E.2d 470, 473 (Ind. 2012). Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). We construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, and our review is limited to the materials designated to the trial court. *Id.* We carefully review a decision on a summary judgment motion to ensure that the losing party was not improperly denied his day in court. *Id.*

When a nonmoving party does not respond to a summary judgment motion within thirty days -- by filing a response, requesting a continuance under T.R. 56(I), or filing an affidavit under T.R. 56(F) -- the trial court cannot consider summary judgment filings that

---

[2] That admission was:

> That with regard to the Hickory Plaza transaction, Peter Karagan fulfilled all requirements or conditions precedent, including procuring, if necessary, a ready, willing, and able purchaser or lessee, for him to be paid pursuant to the 75%/25% compensation agreement.

(App. at 310.) The trial court found Karagan was not entitled to a commission from that transaction.

3

party subsequently makes. *Miller v. Yedlowski*, 916 N.E.2d 246, 247 (Ind. Ct. App. 2009), *trans. denied*.

A party who moves for summary judgment bears the risk that the court will enter summary judgment in favor of the non-moving party, even when the non-moving party has not filed a cross-motion for summary judgment or otherwise responded to the summary judgment motion. *Murphy v. Curtis*, 930 N.E.2d 1228, 1233 (Ind. Ct. App. 2010), *trans. denied*. A trial court is not required to grant an unopposed motion for summary judgment; summary judgment is awarded on the merits of the motion, not on technicalities. *Id*. *See* T.R. 56(C) ("[s]ummary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits of evidence, but the court shall make its determination from the evidentiary matter designated to the court"). While a party who does not respond to a motion for summary judgment may be limited to the facts established by the movant's submissions, such failure to respond does not preclude argument of the relevant law on appeal. *Murphy*, 930 N.E.2d at 1234.

We must therefore determine whether Karagan's own designated evidence gives rise to a genuine issue of material fact that precludes summary judgment. It does not.

1. Genuine Issue of Fact

Larson argues Karagan's own designated evidence gives rise to a factual dispute about the terms of Karagan's oral contract:

> At the time of his departure, the parties disagreed as to when and how commissions were to be paid. . . . Stated different, [sic] the payments owed by [Larson] may end on the day he left employment or some time later based on

4

work in process, which would be days, weeks, or months after Karagan separated from employment.

(Appellant's Br. at 16-17.) As Larson's admissions indicate there was no such factual dispute, summary judgment was appropriate.

Under T.R. 36, the failure to respond in a timely manner to a request for admissions causes those matters to be admitted and conclusively established by operation of law. *City of Muncie v. Peters*, 709 N.E.2d 50, 54 (Ind. Ct. App. 1999), *reh'g denied, trans. denied*. Requests for admissions under T.R. 36 may, in addition to addressing evidentiary matters, ask for admissions as to legal issues, contentions, and conclusions, if related to the facts of the case. *Id.* Matters admitted under the rule are deemed conclusively established, eliminating the need to prove them at trial. *Id.*

However, a party who made admissions by failing to respond may move to withdraw those admissions pursuant to T.R. 36(B). *Id.* The trial court may grant a motion to withdraw admissions if it determines: (1) withdrawal or amendment will subserve the presentation of the merits, and (2) prejudice in maintaining the action or defense will not result to the party that obtained the admission. *Id.* The party seeking withdrawal has the burden of demonstrating the presentation of the merits will be subserved by withdrawal, and the party who obtained the admissions has the burden of demonstrating it will be prejudiced if the trial court permits withdrawal. *Id.*; T.R. 36(B). Even if both of these conditions are satisfied, the rule does not compel the trial court to grant a request to withdraw admissions; rather, the court may, in its discretion, permit withdrawal. *Peters*, 709 N.E.2d at 54-55. We will

5

reverse the grant or denial of a motion to withdraw admissions only for an abuse of discretion. *Id*. at 55.

Karagan's first request for admissions listed ten transactions for which Larson had received or was due to receive commissions. The second set of admissions indicated Karagan "fulfilled all the requirements . . . to be paid "pursuant to the 75%/25% compensation agreement" for those transactions. (App. at 299-301.) Larson did not respond and the requests were deemed admitted.[3] In light of those admissions we cannot find error to the extent the trial court determined there was no genuine issue of fact as to the interpretation of the parties' oral agreement. Summary judgment for Karagan was not error.

2.      Treble Damages

Larson next argues there was no evidence of criminal intent to support the application of the criminal conversion statute that was the basis of the award of treble damages to Karagan. There was ample evidence to permit treble damages pursuant to the statute.

Ind. Code § 34-24-3-1 provides in pertinent part:

---

[3] As noted above, Larson moved to withdraw the admissions. The motion was denied except as to admission number ten, which addressed a transaction where Larson alleged Karagan "had nothing whatsoever to do with the transaction in question, and thus [Larson] should have no liability whatsoever to [Karagan] on that particular count." (App. at 317.) That evidence does not reflect there is a genuine issue of fact as to the interpretation of the compensation agreement, which is the only issue of fact Larson asserts on appeal. Nor did the trial court find Karagan entitled to a commission on that transaction.

6

If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43,[4] IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times:

    (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; or

    (B) the total pump price of the motor fuel received, in the case of a liability that is covered by IC 24-4.6-5.

(2) The costs of the action.

(3) A reasonable attorney's fee.

(Footnote added.) This statute is sometimes referred to as the "Indiana crime victim's relief act." *Gilliana v. Paniaguas*, 708 N.E.2d 895, 899 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. It permits a person who has suffered a pecuniary loss as a result of a criminal conversion to bring a civil action to recover the loss. *Sam & Mac, Inc. v. Treat*, 783 N.E.2d 760, 766 (Ind. Ct. App. 2003). Unlike in a criminal trial, a claimant need prove by only a preponderance of the evidence that the defendant committed the criminal act. *Id*. A conviction of conversion is not a condition precedent to recovery in a civil action brought under the crime victim's relief act, *id.*, but the claimant must prove all the elements of the criminal act. *Id.*

In any criminal conversion action, criminal intent must be proven. *Id.* It is this *mens rea* requirement that differentiates criminal conversion from the more innocent breach of

---

[4] It appears Karagan was awarded treble damages pursuant to Ind. Code § 35-43-4-3: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." The trial court noted in its judgment that Karagan's complaint alleged breach of contract and conversion.

Larson states "[t]he criminal act that Karagan utilized for treble damages and an attorney fee award," (Appellants' Br. at 13) was "Ind. Code § 31-43-4-3(a)." (*Id*. at 14.) There does not appear to be any such statute in the Indiana Code. Nor does the page of the appendix to which Larson directs us include a reference to any such statute.

7

contract or failure to pay a debt -- situations the criminal conversion statute was not intended to cover. *Id.*

Karagan had to prove by a preponderance of the evidence Larson acted knowingly or intentionally. Ind. Code § 35-43-4-3. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.* In the case of conversion, the claimant must prove the control exercised over the property was unauthorized, *Midland–Guardian Co. v. United Consumers Club, Inc.,* 499 N.E.2d 792, 797 (Ind. Ct. App. 1986), *reh'g denied, trans. denied,* and the accused was aware of a high probability the control was unauthorized. *Id.* at 798.

Karagan did so prove. In *White v. Indiana Realty Associates II*, 555 N.E.2d 454, 458 (Ind. 1990), our Indiana Supreme Court addressed "the rare situation in which criminal intent may be found in a civil action through summary judgment." In a landlord-tenant civil dispute, the Court found White, Indiana Realty's tenant, violated "the criminal provisions of Ind. Code § [sic] 35-43."[5] *Id.* at 455. Indiana Realty sought treble damages in its action against White and moved for summary judgment. White, like Larson in the case before us, did not file affidavits or even respond to the complaint. The trial court granted summary judgment for White and we affirmed.

Our Supreme Court first noted it will be a rare landlord-tenant dispute that "presents

---

[5] That article addresses criminal conversion and trespass. Trespass was the issue in *White*.

8

sufficient evidence of criminal intent to warrant treble damages and fees under Ind. Code §

34-4-30-1.  Moreover, it is even less likely that the proof of criminal intent will be so strong

that there is no genuine issue of material fact, warranting summary judgment."  *Id*. at 456.  It

further noted "all the alleged criminal acts include the element of *mens rea* or criminal intent,

and Indiana Realty must carry the burden of proving it."  *Id*. at 457.

> But Indiana Realty was able to prove criminal intent.  It presented:

> the following uncontroverted facts which we conclude were adequate to establish White's criminal intent in violation of one of the criminal acts alleged in the complaint:
> 1) On December 4, 1985, the trial court entered a final judgment for damages and possession in favor of Indiana Realty.
> 2) Two days after White was directed by the court to transfer possession to Indiana Realty, she initiated a federal bankruptcy action which arguably lacked any substantive legal merit.  White voluntarily moved to dismiss the suit.  She continues to assert however, that the suit stayed any municipal court proceeding.
> 3) White retained possession until April 10, 1986, more than four months after the date set by the trial court for transfer of possession.
> 4) Throughout this four-month period, White both refused to vacate the apartment, and refused to pay any rent.  As White's attorney admits, "Nancy White does not dispute her owing rental from December 8, 1986 through April 9, 1986."

*Id*. at 457-58 (footnotes omitted).  The Court determined:

> [T]he extremely aggravated action by the tenant and her approach to the litigation persuade us that summary judgment was appropriate.  In the face of two affidavits supplied by Indiana Realty which outlined White's lengthy holdover beyond the trial court's order to vacate in December 1985 and her effort to use the bankruptcy system to retain possession of what was Indiana Realty's property, White neither supplied counter-affidavits nor even an answer.  In a sense, she did even less than "rest upon the mere allegations or denials of her pleadings." Ind. Trial Rule 56(C).  The facts of this case present the rare situation in which criminal intent may be found in a civil action through summary judgment.

*Id*. at 458.

The case before us is similar. Karagan moved for summary judgment and Larson did not respond. Karagan requested admissions, twice, and Larson did not respond. The statements that were accordingly deemed admitted show Larson had or was due the commissions for the listed transactions, and that Karagan had fulfilled all the conditions to be paid the commissions pursuant to the parties' agreement. At the damages hearing Larson testified he had between $40,000 and $45,000 that was due Karagan. Larson's principal broker testified that in her experience, if transactions were not yet closed when an agent left, the agent was still entitled to receive the commissions. But Karagan's commissions were withheld and he testified he had gone without the money for "over two years . . . more like three years." (Tr. at 100.) As Karagan demonstrated Larson was aware of a high probability its control over Karagan's property was unauthorized, we cannot say the trial court erred in determining Karagan was entitled to treble damages.

3.    Prejudgment Interest

On cross-appeal, Karagan argues the trial court should have awarded him prejudgment interest. We review Karagan's claim for *prima facie* error, as Larson did not file a reply brief to address this issue. *See Reid v. State,* 883 N.E.2d 872, 873 (Ind. Ct. App. 2008) (noting the defendant did not respond to the State's allegation on cross-appeal and accordingly we would review for *prima facie* error).

The trial court determined Karagan was not entitled to prejudgment interest because "[t]he damages were not sufficiently fixed and ascertainable to support the assessment of

10

prejudgment interest." (App. at 19.) An award of prejudgment interest is founded on the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and unless interest is added, the plaintiff cannot be fully compensated for his loss. *Id.* Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation. *Id.*

Damages in the form of prejudgment interest are warranted in a contract case if the terms of the contract make the claim ascertainable and the amount of the claim rests on mere computation. *Id.* Prejudgment interest may be trebled. *See Midland-Guardian Co.*, 499 N.E.2d at 800 ("[s]ince prejudgment interest was properly an element of the actual damages in this case, and since [the crime victim's statute in effect when Midland-Guardian was decided] mandates trebling actual damages, there was no error in trebling the interest").

Karagan has made a *prima facie* case prejudgment interest should have been awarded. An award of prejudgment interest is proper when the trier of fact does not have to exercise judgment in order to assess the amount of damages. *Kummerer v. Marshall*, 971 N.E.2d 198, 201 (Ind. Ct. App. 2012). Examples of cases where prejudgment interest is appropriate include those for breach of contract when the damages were principal payments made under a promissory note, the amount of a mechanics' lien for a contractor's unpaid bills for a remodeling project, and an amount stipulated to at a damages hearing. In such cases the amount of damages is clear and does not require any interpretation or judgment on the part of the trier of fact.

11

The same is true when, as in the case before us, the amount of unpaid commissions is clear. In *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1074 (Ind. Ct. App. 2007), the damages were complete and ascertainable when Hansen sought the amount of business development commissions he was owed when he resigned. "The trial court did not have to exercise its judgment to assess the amount of damages. Consequently, prejudgment interest is proper as a matter of law and we remand this matter to the trial court for a calculation of the amount of prejudgment interest to which Hansen is entitled." *Id.*

In the case before us the evidence, including Larson's admissions, established what Karagan's commission agreement was, the transactions for which he was entitled to commissions, and the amount of the commissions. The trial court therefore should have awarded Karagan prejudgment interest, *see, e.g., Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1140-41 (Ind. Ct. App. 2002) (Ward entitled to prejudgment interest when undisputed evidence showed "Noble Roman's stipulated to the amounts of the majority of the damages the Wards requested" such that court was not required to exercise any discretion to determine stipulated amount). We remand for it to do so.

## CONCLUSION

The trial court properly granted summary judgment for Karagan, and its award of treble damages was not error. However, it should have awarded Karagan prejudgment interest. We accordingly affirm in part, reverse in part, and remand for calculation of the amount of prejudgment interest to which Karagan is entitled.

12

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and KIRSCH, J., concur.