**FOR PUBLICATION**


FILED
Sep 23 2014, 10:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT
THE BRANHAM CORPORATION:

**DONN H. WRAY**
**MARC A. MENKVELD**
Katz & Korin, PC
Indianapolis, Indiana

**ROGER L. BURRUS**
Burrus & Sease, LLP
Zionsville, Indiana

**MICKEY J. LEE**
McGinnis Wutscher Beiramee, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
WHITE RIVER:

**PAUL D. VINK**
**BRYAN H. BABB**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
NEWLAND RESOURCES, LLC AND
DOROTHY ALIG:

**ROBERT V. CLUTTER**
**SERGEY G. GRECHUKHIN**
Kirtley, Taylor, Sims, Chadd & Minnette, P.C.
Lebanon, Indiana

ATTORNEYS FOR FIFTH THIRD
CAPITAL HOLDINGS, LLC:

**JULIA BLACKWELL GELINAS**
**MAGGIE L. SMITH**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEY FOR ECOHOLDINGS, LLC:

**MELISSA R. GARRARD**
Melissa R. Garrard, Attorney at Law, P.C.
Lebanon, Indiana

ATTORNEY FOR JOHN MICHAEL
KENSILL AND SUSAN KENSILL:

**THOMAS E. DENSFORD**
Bauer & Densford
Bloomington, Indiana

ATTORNEYS FOR APPELLANTS
THOMAS N. ECKERLE AND
THOMAS N. ECKERLE PROF. CORP:

**DINA M. COX**
**NEAL BOWLING**
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
THE BRANHAM CORPORATION:

**DONN H. WRAY**
**MARC A. MENKVELD**
Katz & Korin, PC
Indianapolis, Indiana

**ROGER L. BURRUS**
Burrus & Sease, LLP
Zionsville, Indiana

**MICKEY J. LEE**
McGinnis Wutscher Beiramee, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| THE BRANHAM CORPORATION, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | )   No.  06A05-1311-CT-572 |
| | ) |
| NEWLAND RESOURCES, LLC; SAMUEL | ) |
| SUTPHIN; WHITE RIVER FUNDING CORP.; | ) |
| WHITE RIVER VENTURE PARTNERS, L.P.; | ) |
| GENE TANNER; DAVID KNALL; MADEIRA | ) |
| PARTNERS, L.P.; MIKE HENDERSON; | ) |
| BRIAN HENDERSON; TIM DEBRUIKER; | ) |
| DRIVER SOLUTIONS, LLC; ARCHIE LESLIE; | ) |
| FIFTH THIRD BANK; ECOHOLDINGS, LLC; | ) |
| DOROTHY ALIG; GREENLEAF, LLC; ROYAL | ) |
| RUN PARTNERS, L.P.; JOHN MICHAEL | ) |
| KENSILL; SUSAN KENSILL, and | ) |
| ECOSOURCE, LLC, | ) |
| | ) |
| Appellees-Defendants. | ) |

2

THOMAS N. ECKERLE; THOMAS N.          )
ECKERLE PROF. CORP.,                  )
                                      )
    Appellants-Defendants,         )
                                      )
        vs.                      )
                                      )
THE BRANHAM CORPORATION,              )
                                      )
    Appellee-Plaintiff.            )

---

APPEAL FROM THE BOONE CIRCUIT COURT
The Honorable J. Jeffrey Edens, Judge
Cause No. 06C01-1201-CT-1

---

**September 23, 2014**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

In 2007, The Branham Corporation (Branham) obtained a judgment against Newland Resources, LLC (Newland) and related entities for breach of contract. The judgment was uncollectible in light of 2004-2005 distributions by Newland that had depleted corporate assets available for creditors. In 2011, Branham filed proceedings supplemental and new claims for relief under the Indiana Crime Victims Relief Act, Indiana Code section 34-24-3-1 (Victims Relief Act)[1] and Indiana's Corrupt Business Influence Act, Indiana Code section

---

[1] This act permits a person who has suffered a pecuniary loss as a result of a violation of specified criminal statutes to bring a civil action to recover an amount not to exceed three times the damages, together with costs and a reasonable attorney's fee. Larson v. Karagan, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012).

3

34-24-2-6 (RICO).[2]  In addition to Newland, named defendants included the appellees: Samuel Sutphin (Sutphin), White River Funding Corp., White River Venture Partners, L.P., Gene Tanner, David Knall, Madeira Partners, L.P., Mike Henderson, Brian Henderson, Tim DeBruiker, Driver Solutions, LLC, Archie Leslie, Fifth Third Bank, EcoHoldings, LLC (EcoHoldings), Dorothy Alig, Greenleaf, LLC (Greenleaf), Royal Run Partners, L.P., John Michael Kensill (Kensill), Susan Kensill, and Ecosource, LLC (Ecosource).[3]  Summary judgment was granted to the majority of the defendants[4] on the new claims, on statute of limitations and res judicata grounds.  Branham appeals the grant of summary judgment.

The appeal of the grant of summary judgment has been consolidated with an appeal by Thomas Eckerle, a past provider of legal services to Newland, and the Thomas Eckerle Professional Corporation (collectively, Eckerle).  Eckerle appeals the denial of a motion to correct error which challenged the February 4, 2013 dismissal, without prejudice, of Eckerle

---

[2] This (civil RICO) act permits an aggrieved person to bring an action against a person who has violated Indiana Code section 35-45-6-2 (criminal RICO) to recover an amount equal to three times the person's actual damages suffered as a result of corrupt business influence, costs, a reasonable attorney's fee, and any punitive damages awarded by the court and allowable under law.

[3] The defendants are members of Newland or entities who received distributions or monies from Newland. Hereinafter, in the discussion of arguments, the defendants are sometimes collectively referred to as "Newland."

[4] The 2001 Complaint for Damages named as defendants the afore-mentioned defendants and also Lindsey Harmon, James B. Harmon, Alana Fine Jewelry, N.V., Cornelius Alig, Thomas N. Eckerle, Thomas N. Eckerle Professional Corporation, Melissa Rhodes Garrard, Melissa R. Garrard, Attorney at Law, P.C., John E. Bator, Bator Law, LLC, Bator Redman Bruner Shive & Ludwig, P.C., Delores ("Dee") Sutphin, and "Other Yet to be Determined."  (App. 139.)

Lindsey Harmon was dismissed on April 3, 2012.  Delores Sutphin and Melissa Garrard were dismissed without prejudice on August 24, 2012.  James Harmon and Alan Fine Jewelry, N.V. were dismissed on November 18, 2012.  The Bator defendants and Eckerle were dismissed without prejudice on February 4, 2013.

as a defendant. We affirm the trial court's summary judgment order but remand for inclusion of Eckerle as a prevailing defendant. We reverse the order dismissing Eckerle.

## Issues

Branham presents three issues for review, which we consolidate and restate as the following issue: whether summary judgment was improvidently granted.

Eckerle presents a single, consolidated issue: whether he, like the other defendants, was entitled to a grant of summary judgment as opposed to a dismissal that deprived him of the opportunity to protect his professional reputation and seek attorney's fees from Branham for frivolous litigation.

## Facts and Procedural History

To date, Branham has not been paid a 2007 judgment obtained against Newland. Branham has alleged that funds that would have been available to pay the judgment were wrongfully depleted by Newland's 2004-2005 distributions of proceeds Newland received upon the 2004 sale of its wholly-owned subsidiary, Boone County Utilities, LLC (BCU). The distributions to shareholders and members, which took place during BCU's bankruptcy proceedings, left Newland and BCU with joint assets of less than $10,000.

The facts surrounding the September 15, 2004 commencement of litigation[5] and the November 2, 2007 jury verdict were recited by this Court in a prior appeal:

---

[5] Branham filed a complaint against Newland on September 15, 2004. The matter was removed to federal court, then returned to state court. Branham filed its First Amended Complaint on October 31, 2005. Therein, Branham alleged that Newland had breached a contract and misappropriated funds and that distribution of BCU funds to Newland and other defendants had been detrimental to Branham's rights. On July 10, 2006, Branham filed a Second Amended Complaint relating to alleged improper distribution of BCU assets. The second complaint was stricken.

5

Newland was organized on October 11, 1994 and originally formed to develop real estate. Sometime in 1992 or 1993, prior to its organization, Newland began to explore a possible development project in Boone County consisting of 270 acres at the intersections of State Road 334 and I-65 now known as Royal Run Subdivision. Newland considered several options for water and sewer utility service to its residential subdivision in the Royal Run area before ultimately forming a wholly-owned utility operating company in April 1996 known as Boone County Utilities, LLC, (BCU). BCU was to provide water and sewer utilities to the Royal Run area.

Newland entered into an agreement with Branham (the Branham Agreement) for assistance in negotiating a contract with the City of Indianapolis for the acceptance of sewage flow from the BCU service area, and in negotiating a contract with the Indianapolis Water Company for selling water to BCU for delivery to the BCU service area. The Branham Agreement contained the following compensation provision [for a monthly retainer and success fee]. . . .

BCU entered into a purchase agreement with the Town of Whitestown (the Whitestown Purchase Agreement) on February 11, 2004. . . .

Article III of the Whitestown Purchase Agreement provided that Whitestown would transfer to BCU $4,200,000 at closing. Article II, 2.4 of the Whitestown Purchase Agreement further provided in pertinent part: In addition to the Purchased Assets, on and after the Closing Date, Whitestown shall assume the following [obligations of BCU]: . . .

BCU (debtor) ultimately filed a petition for Chapter 11 bankruptcy (the Bankruptcy Matter). Valenti Held Real Estate Group, LLP (Valenti) was a named creditor and interested party in the Bankruptcy Matter. In addition to the Bankruptcy Matter, there was a matter pending before the Indiana Utility Regulatory Commission (IURC) relating to the continued operation of BCU (the IURC Matter). Valenti claimed that the order issued by the IURC in the IURC Matter entitled Valenti to refunds of $1,743,678.33 (Refund Claim) and Valenti claimed and certified in the Bankruptcy Matter that it was entitled to an additional $2,478,496.00 (Certified Claim) in reimbursement for sewer and

---

Because BCU was in bankruptcy, Branham had filed a motion for relief from an automatic stay under 11 U.S.C. § 362 so that it could file an action in state court against BCU. The motion was denied. Branham filed proofs of claim against BCU. However, the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division, disallowed the claims as untimely or based upon a contract between Branham and Newland (to which debtor BCU was not a party). The disallowance was affirmed on appeal. In re Boone County Utilities, LLC, 506 F.3d 541 (7th Cir. 2007).

water facilities previously constructed and dedicated to BCU. Valenti's Refund Claim and Certified Claim totaled $4,222,174.33.

On February 11-12, 2004, Whitestown, BCU, and Valenti entered into a Novation and Substitution Agreement (the Novation Agreement) that provided that Whitestown would pay Valenti a cash amount of $900,000.00 and Whitestown would issue a Series B Junior Bond (Valenti Bond) for $3,322,175.00. The Novation Agreement was conditioned upon approval by the Bankruptcy Court in the Bankruptcy Matter and any other regulatory approval of the Novation Agreement and the Purchase Agreement. Upon such approval, Valenti agreed that the Whitestown obligations under the Novation Agreement operated as a novation and substitution of any and all obligations of BCU under prior agreements.

BCU, Debtor, filed in the Bankruptcy Court a Disclosure Statement Relating To Debtor's Amended Liquidating Plan of Reorganization (Disclosure Statement) and an Amended Liquidating Plan of Reorganization (Amended Plan). The Disclosure Statement and the Amended Plan established that Whitestown would pay $4,200,000.00 to BCU, and would pay $4,222,175.00 to Valenti to resolve BCU's obligations to Valenti. A Motion to Sell was submitted to the Bankruptcy Court seeking approval for the sale of BCU to Whitestown. The Bankruptcy Court held a hearing on the Motion To Sell [sic] and issued its Memorandum of Decision granting the Motion to Sell and approving the Purchase Agreement and the Novation Agreement in its entirety subject to immaterial modification. The closing occurred on July 20, 2004.

On October 31, 2005, Branham filed its First Amended Complaint against Newland and others. After the answer and affirmative defenses were filed and several orders were issued, the only remaining count of the Branham complaint alleged a breach of contract against Newland, the only remaining party, pertaining to the calculation and payment of the success fee. Newland filed a motion for partial summary judgment that was denied, and the matter proceeded to a jury trial. Newland's motions for judgment on the evidence were denied by the trial court and the jury, after determining liability, ultimately returned a verdict in favor of Branham for damages in the amount of $397,853.92 using the formula provided in Jury Instruction No. 5. The trial court entered judgment on the jury verdict.

Newland Resources, LLC v. Branham Corp., 918 N.E.2d 763, 767-69 (Ind. Ct. App. 2009)

("Newland I"). The Newland I Court determined that the trial court did not err in its

7

interpretation of the contractual provisions triggering the entitlement to and calculation of the success fee, and that there was sufficient evidence before the jury on the issue of the purchase price to support the jury's calculation of the success fee. Id. at 771. The matter was remanded for the calculation of post-judgment interest owed to Branham. Id. at 773.

On cross-appeal, Branham argued that the trial court erred by dismissing counts alleging a civil conversion by Newland and a civil conspiracy by Sutphin, White River, Alig, Greenleaf, Harmon, EcoHoldings, Kensill, and Ecosource. Id. at 774. The Newland I Court observed, citing Indiana Code section 35-43-4-3, that criminal conversion requires proof that a person knowingly or intentionally exerted unauthorized control over property of another person. Id. at 775. The Court agreed with Newland's contention that the claim for civil conversion was subject to dismissal for failure to state a claim because "Branham had not identified a specific fund of money which Newland had refused to deliver to Branham." Id. at 776. The Court acknowledged that, "while money may be the subject of an action for conversion, the money must be capable of being identified as a special chattel." Id. (citing Huff v. Biomet, Inc., 654 N.E.2d 830 (Ind. Ct. App. 1995), abrogated on other grounds by St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699 (Ind. 2002), and Kopis v. Savage, 498 N.E.2d 1266 (Ind. Ct. App. 1986)). Reiterating that "'[t]he refusal to pay a debt will generally not support a conversion action,'" the Court concluded that the trial court did not err by dismissing the civil conversion claim. Id. (quoting Huff, 654 N.E.2d at 836).

In addressing the allegation of error based upon the dismissal of the civil conspiracy claim, the Newland I Court described a civil conspiracy as "a combination of two or more

8

persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means" and clarified that "civil conspiracy is not an independent cause of action." Id. The proponents of dismissal had noted "no agreement or meeting of the minds, any circumstantial evidence of an agreement, specific intent by the participants to injure Branham, fraudulent statements, or the object of the conspiracy had been identified." Id. at 776-77. The Court's review of the complaint and arguments led to the conclusion that the civil conspiracy claim had properly been dismissed. Id. at 777. The trial court's judgment was affirmed. Id.

On June 22, 2010, the trial court entered an order, consistent with the Newland I opinion, that Newland pay post-judgment interest. Newland was ordered to pay the $397,853.92 judgment and post-judgment interest on or before July 7, 2010. However, Newland did not pay the judgment.

On December 29 and 30, 2011, Branham filed a Verified Motion for Proceedings Supplemental to Execution and Garnishment (Cause No. 06C01-0409-PL-517) and a Complaint for Damages (Cause No. 06C01-1201-CT-0001) (Complaint), respectively. In the Complaint, Branham alleged Victims Relief Act and RICO claims (based upon alleged predicate offenses of fraud/fraudulent transfer, deception, and conversion/theft/receiving stolen property). The essence of the allegations is that the 2004-2005 distributions by Newland of the BCU sale proceeds depleted Newland's assets and rendered Newland unable to pay Branham's contractual claim.

9

Proceedings in the Bankruptcy Court for the Southern District of Indiana were reopened on April 12, 2012, and hearing was held on August 22, 2012. The Bankruptcy Court, which had exercised jurisdiction over the distribution of BCU proceeds to Newland, made the following entry: "Any issues regarding Newland, after distribution was make [sic] to it by the U.S. Bankruptcy Court pursuant to the plan, remained with [the Boone Circuit Court]." (App. 937.)[6]

On May 4, 2012, several of the defendants moved for summary judgment on the claims asserted in the Complaint, contending that they were barred by the applicable statute of limitations. On July 18, 2012, some defendants sought summary judgment on grounds that the claims were barred by the doctrine of res judicata. Some of the remaining defendants specifically joined in the motion for summary judgment; the trial court deemed the joinder of

---

[6] Indiana courts have limited subject matter jurisdiction over matters relating to bankruptcy proceedings. "It is neither this [C]ourt's purpose nor its function to construe bankruptcy laws." Holiday v. Kinslow, 659 N.E.2d 647, 649 (Ind. Ct. App. 1995). When a bankruptcy court addresses a specific issue bearing on a state law claim, we should apply the bankruptcy court's finding unless doing so would compromise Indiana's legal framework. Id. As the Indiana Supreme Court has observed:

> Under the U.S. Constitution, the federal government enjoys the exclusive power to promulgate bankruptcy laws. U.S. Const., art. I, § 8. "Because bankruptcy law is federal law, enacted pursuant to the constitutional grant of bankruptcy power, it preempts state law … pursuant to the supremacy clause…." Renges, Inc. v. PAC Financial Corp., (1987), Ind. App., 515 N.E.2d 563, 566 (quoting In Re Safren, 65 B.R. 566, 573 (Bankr. C.D. Cal. 1986)). Both Congress and the U.S. Supreme Court have recognized the preeminent nature of federal court jurisdiction over bankruptcy matters. Congress enacted 28 U.S.C. § 1334(a), which provides that federal courts have original and exclusive jurisdiction in all bankruptcy matters. "[T]here should be no legitimate question about the legislative intent to vest the [federal court] with a complete, pervasive, jurisdiction over all matters that have to do with a bankruptcy case…." George Treister, Fundamentals of Bankruptcy Law § 2.01 (2d ed. 1988). In addition, in Pepper v. Litton, the U.S. Supreme Court concluded that "the jurisdiction of the bankruptcy court is exclusive of all other courts." Pepper v. Litton, 308 U.S. 295, 304, 60 S. Ct. 238, 244, 84 L.Ed. 281 (1939). Finally, this court has also recognized the "supremacy of the federal courts in matters related to bankruptcy proceedings." Carpenter v. Farm Credit Services (1995), Ind., 654 N.E.2d 1125, 1127.

Hammes v. Brumley, 659 N.E.2d 1021, 1027 (Ind. 1995).

some others. Eckerle filed a separate motion for summary judgment regarding "Predicate Offense Claims," in which John Bator and the Bator law firms later joined. (App. 36.) On August 21, 2012, hearing was held on motions for summary judgment based on statute of limitations contentions by several defendants.

On August 24, 2012, Branham filed a motion to dismiss, without prejudice, the attorney-defendants, including Eckerle. The attorney-defendants objected to the grant of the motion, on the basis that they were entitled to dismissal with prejudice and a statutory award of attorney fees because Branham had pursued a frivolous claim. After a hearing, the dismissal without prejudice was granted, and Eckerle's summary judgment motion was dismissed.

On October 22, 2012, hearing was held on motions for summary judgment based on res judicata contentions of several defendants. On November 18, 2012, the trial court granted summary judgment against Branham, concluding that the applicable two-year statute of limitations had expired.[7] On November 19, 2012, the trial court entered a second summary judgment order against Branham, concluding that the derivative claims (resting upon allegations of predicate offenses of fraud, deception, and conversion) were barred because of the past litigation as to civil conversion and civil conspiracy and because of the opportunity to litigate claims arising from the same operative facts.

Eckerle filed a motion to correct error, asserting that his participation in the summary judgment hearings precluded voluntary dismissal, and that he possessed a right to clear his

---

[7] On the same date, the trial court granted the motion to dismiss filed by Alana Fine Jewelry, N.V., in which James Harmon had joined.

professional reputation and seek attorney's fees. The trial court conducted a hearing on October 23, 2013. The motion to correct error was denied on November 21, 2013. Branham and Eckerle independently pursued appeals. The appeals were consolidated upon Eckerle's motion.

**Discussion and Decision**

Summary Judgment Standard of Review

A trial court's grant of summary judgment on appeal to this Court is "'clothed with a presumption of validity,'" and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. Williams v. Tharp, 914 N.E.2d 756, 762 (Ind. 2009) (quoting Rosi v. Bus. Furniture Corp., 615 N.E.2d 431, 434 (Ind. 1993)). Our standard of review is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.
>
> Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009)

(internal citations omitted).

When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a

12

factually unchallenged affirmative defense that bars the plaintiff's claim. First Farmers Bank & Trust Co. v. Whorley, 891 N.E.2d 604, 608 (Ind. Ct. App. 2008), trans. denied. Here, Newland has argued that it has affirmative defenses based upon the applicable statute of limitations and the doctrine of res judicata.

The trial court entered findings of facts and conclusions thereon. While a trial court's enunciation of findings of fact and conclusions on such matters may aid our review and reveal the reasoning of the trial court, they are not required and are not binding upon appeal. New Albany Historic Pres. Comm'n v. Bradford Realty, Inc., 965 N.E.2d 79, 84 (Ind. Ct. App. 2012). The role of the trial court at summary judgment is not to act as a trier of fact, but rather to determine whether the movant established, prima facie, either that there is insufficient evidence to proceed to trial, or that the movant is otherwise entitled to judgment as a matter of law. Kader v. State Dept. of Correction, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013). Witness credibility and the relative apparent weight of evidence are not relevant considerations at summary judgment. Id.

Analysis

Statute of Limitations.

The parties agree that the two-year statute of limitation of Indiana Code section 34-11-2-4, for injury to personal property, is applicable.[8] Newland contends – and the trial court agreed – that Indiana Code section 34-11-2-4 bars the instant claims because Branham did

---

[8] Indiana Code section 34-11-2-4(a) provides: "An action for: (1) injury to person or character; (2) injury to personal property; or (3) a forfeiture of penalty given by statute; must be commenced within two (2) years after the cause of action accrues."

not commence its crime victims/RICO action within two years after it discovered or should have discovered it had been injured. The trial court determined that Branham knew of the distribution by 2005 and, at the latest, knew of its injury by November 26, 2007 when the judgment upon the jury verdict was entered.

"Statutes of limitation seek to provide security against stale claims, which in turn promotes judicial efficiency and advances the peace and welfare of society." Cooper Indus., LLC v. City of South Bend, 899 N.E.2d 1274, 1279 (Ind. 2009). The party pleading the statute of limitation bears the burden of proving the suit was commenced beyond the allowable statutory period. Id.

Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known that an injury had been sustained as a result of the tortious act of another. Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992). The determination of when a cause of action accrues is generally a question of law. Cooper, 899 N.E.2d at 1280. "For an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred." Id. However, the determination may turn on a question of fact. Generally, when application of a statute of limitation rests on questions of fact, it is an issue for the jury to decide. Cooper, 899 N.E.2d at 1279. See also Babson Bros. Co. v. Tipstar Corp., 446 N.E.2d 11, 14 (Ind. Ct. App. 1983) (recognizing that "the question of when a cause of action accrues usually requires a determination by the factfinder").

14

At the summary judgment hearing, Branham's counsel acknowledged that "Branham had knowledge that money was being passed out by Newland" but questioned "what could Branham do about it" prior to June 22, 2010, when, according to Branham, a final appealable judgment "supplanted" the November 26, 2007 "judgment entry," from which "it differed … in important ways." (Tr. 86.) Branham argues on appeal that it could not have known of its injury until Newland failed to pay the 2007 judgment by its July 13, 2010 deadline. Branham considers the 2007 judgment to be a "non-final" judgment because Newland pursued an appeal. Appellant's Brief at 21. Branham asserts: "Newland, by appealing the judgment, prevented it from becoming final until 2010." Appellant's Brief at 33. Although Newland did not move to stay the judgment, Branham claims a stay was effectively granted when the trial court imposed a payment deadline.[9]

In light of these arguments, we will initially address the notion that the 2007 judgment was not final during the appeal. Indiana Appellate Rule 2(H) defines "final judgment" to include a judgment that "disposes of all claims as to all parties." The jury entered a verdict in favor of Branham on November 2, 2007 and the trial court entered final judgment pursuant to Indiana Trial Rules 54 and 58 on November 26, 2007. Indiana Appellate Rule 39(A) provides:

> An appeal does not stay the effect or enforceability of a judgment or order of a trial court or Administrative Agency unless the trial court, Administrative Agency or Court on Appeal otherwise orders.

---

[9] The Order Awarding Plaintiff Post-Judgment Interest included the language: "IT IS FURTHER ORDERED that the Defendant shall have twenty-one (21) days to satisfy said judgment." (App. 336.)

Newland did not obtain a stay of the 2007 judgment. Accordingly, it was enforceable immediately, notwithstanding the appeal. As previously stated, the judgment was affirmed on appeal. It was not subject to being "supplanted" by a later order of the trial court for post-judgment interest. Although it is true, as Branham argued to the trial court, that the 2010 judgment "is the only one that controls ordered payment by a date certain," Branham provides no authority for the proposition that a judgment without a specified payment deadline is interlocutory or unenforceable.

Several years passed before Branham sought to enforce the 2007 final judgment. In 2011, Branham filed proceedings supplemental. Contemporaneously, in its 2011 Complaint, Branham alleged causes of action under the Victims Relief Act and (civil) RICO. These are derivative claims in the sense that they require predicate offenses. See Larson v. Karagan, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012) (observing that "the [Crime Victims Relief Act] claimant must prove all the elements of the criminal act"). See also Wojtowicz v. State, 545 N.E.2d 562, 564 (Ind. 1989) (holding that establishment of pattern of racketeering activity is a necessary element for proof of crime of corrupt business influence) and Indiana Code section 34-24-2-6 (providing a civil remedy to a person aggrieved by one's violation of criminal RICO).

Newland argued that Branham had waited for years, decided that no payment was forthcoming, and then simply alleged a new injury. The trial court agreed.

Alleging fraud as a predicate offense, Branham described certain distributions occurring in 2005 and before, and claimed:

16

the Defendants intended to defraud Branham because (1) each of them knew, or reasonably should have known, of the Branham/Newland Agreement; (2) each of them knew, or reasonably should have known, of Branham's claim under the Branham/Newland Agreement at least as early as May 10, 2004 as by that date Branham had filed a claim in the BCU Bankruptcy Estate to which was attached a copy of the Branham/Newland Agreement; (3) each of them knew, or reasonably should have known, that Branham had sought leave of the Bankruptcy Court on or about September 9, 2004 to file a complaint in the Boone Circuit Court that would name both Newland and BCU as defendants in an action based on the Branham/Newland Agreement, which leave was denied by the Bankruptcy Court on or about September 14, 2004; (4) the Branham Lawsuit was filed on September 15, 2004; and (5) the Branham Judgment, which was entered on June 22, 2010, put the world on notice of Branham's rights with regard to Newland's economic interest in BCU.

(App. 162.)

With regard to deception as a predicate offense, Branham alleged that Newland and its members made false and misleading statements in order to obtain distributions and in order to obtain a Certificate of Public Convenience and Necessity from the Indiana Utility Regulatory Commission for BCU. Branham also alleged that false statements were made to the Bankruptcy Court:

> During a hearing before the Bankruptcy Court on January 15, 2005, Attorney Bator, as agent for BCU, and Attorney Eckerle, as agent for Newland and its members, represented that adequate funds would be available to pay Branham under the Branham/Newland Agreement.

> During a hearing before the Bankruptcy Court on September 14, 2004, Harmon testified that he would direct Bator Redman to hold funds sufficient to satisfy any claim made under the Branham/Newland Agreement.

> During a hearing before the Bankruptcy Court on January 15, 2005, Attorneys Bator and Eckerle agreed that BCU, Newland and its members intended any payment under the Branham/Newland Agreement to be made out of the proceeds from the sale of BCU's assets.

17

On information and belief, the transcribed statements made during the above-described bankruptcy hearings were false and/or misleading because funds were not available to pay Branham, Bator Redman did not hold funds sufficient to pay Branham and no payment to Branham was made out of the Closing Cash Funds, which are the proceeds from the sale of BCU's assets.

(App. 164-65.)

With regard to Conversion/Theft/Receiving Stolen Property, Branham alleged in part:

The transfers of Closing Cash Funds and/or Post-July 20th BCU Funds from BCU to Newland were Post-March 12th Transfers and were void ab initio because each of the transfers violated the proscription set forth in the March 12th IURC Order that BCU cease to make any transfer of BCU Property to Newland after March 12, 2003 and because each of those transfers was made in violation of Ind. Code § 8-1-2-49.

Ind. Code § 23-18-5-6 provides that a "distribution may not be made if after giving effect to the distribution" either "the limited liability company would not be able to pay its debts as the debts become due in the usual course of business" or "the limited liability company's total assets would be less than the sum of its total liabilities plus … the amount that would be needed if the affairs of the limited liability company were to be wound up at the time of the distribution to satisfy any preferential rights that are superior to the rights of members receiving the distribution."

Ind. Code § 23-18-9-6 provides that creditors must be paid before equity (interest) holders are paid unless adequate reserves are established for the payment of creditors.

Each of the Class A Distributions and the Class B Distributions is void ab initio because it was made in violation of the March 12th IURC Order, Ind. Code § 8-1-2-49, Ind. Code § 23-18-5-6 and Ind. Code § 23-18-9-6.

The Class A Distributions that Newland made to its members with regard to their Class A Membership Interests were void ab initio because each of those Class A Distributions were made in contravention of Newland's Operating Agreement, which is a violation of Ind. Code § 23-18-4-5.

(App. 168-69.)

18

Branham points out that its 2011 Complaint allegations are concerned with Newland-to-member transfers while the allegations of the First Amended Complaint focus upon BCU's conduct (ultimately, a matter of concern for the Bankruptcy Court). Nevertheless, the pertinent inquiry for statute of limitations purposes is when Branham knew, or should have known, of its injury – dissipation of funds such that Branham would not be paid sums rightfully due to it. The trial court concluded that, by the time Branham formed the allegations of its October 2005 amended complaint, Branham knew of the Newland distribution to its members. Clearly, Branham knew in October of 2005 that a member/shareholder distribution had been made, as Branham alleged:

> Rather than pay Branham its full and fair compensation, Newland and Harmon transferred significant funds out of BCU as distributions/dividends to Newland's members, and increased salaries to BCU's operators, including Harmon and Kensill.

(App. 63.) However, Branham did not necessarily know at that time whether assets remained for satisfaction of Branham's claims, despite the distributions.

On August 13, 2007, Branham deposed Jim Harmon (Harmon), acting as the corporate designee of Newland (noticed for deposition pursuant to Indiana Trial Rule 30(b)(6)). Harmon testified that, after the distribution, Newland and BCU jointly had less than $10,000 in assets, consisting of cash in bank accounts.[10] Thus, by the August 2007 deposition,

---

[10] In relevant part, Harmon testified:

Question: Does Boone County Utilities or Newland have assets presently?

Harmon: Yes.

Question: Where?

Newland (by its designee) had admitted that the post-distribution assets were less than $10,000. By the time the judgment was obtained in November 2007, Branham knew that it was entitled to a certain sum, yet the reported assets were of an amount wholly inadequate to pay Branham's judgment. Thus, it became apparent that the depletion of Newland assets had caused Branham injury. Essentially, Branham's judgment was uncollectible. From undisputed facts, a single conclusion can be drawn. To the extent that Branham argues it did not know of the depletion of assets, Branham "in the exercise of ordinary diligence should have known," Wehling, 586 N.E.2d at 843, based upon Harmon's August 2007 deposition testimony. Yet Branham did not file the new lawsuit until over four years later, outside the two-year statute of limitations.

Branham also claims that the "injury inflicted that Branham complains of is Newland's disobedience of the 6/11/10 Order when it failed to pay the Branham Judgment on

---

Harmon: Bank accounts.

Question: Where?

Harmon: First Indiana Bank. . . .

Question: Do these accounts have in excess of $100,000?

Harmon: No.

Question: In excess of $10,000?

Harmon: No.

Question: Are there monies held in trust by any attorneys?

Harmon: Not currently.

(App. 286-87.)

20

or before July 13, 2010. The failure of Newland to pay the Branham Judgment is the <u>sine</u> <u>qua</u> <u>non</u> for Branham's damages not the unlawful Newland-to-member transfers." Appellant's Brief at 30. This novel argument – not developed with citation to relevant authority – is not helpful to Branham. The "failure to pay" does not match the allegations of Branham's Complaint, and with good reason: recovery under the Crime Victims Act and RICO may not be predicated upon a mere failure to pay a judgment.

Branham also argues that Newland – while claiming minimal assets – actually had additional worth because Newland had "a chose in action" or claim that could be asserted against its members to "get back improperly transferred assets." Appellant's Brief at 27. It appears that Branham held out hope that Newland would independently exercise some right of recoupment. Also, according to Branham, it had no obligation to anticipate that the members would, following judgment, fail to disgorge the sums given to them in order to satisfy the judgment against Newland. Nonetheless, even if we assume Newland had some right to recover distributions in whole or part, Branham does not explain how this would have tolled the two-year statute of limitations. Newland, by its designee, had advised Branham that it held minimal assets. Branham knew at this point that its interests as a creditor were not being protected, and Branham was not precluded from timely pursuing its claims for payment although Newland might have some potential avenue for increasing its coffers.

Branham knew, or in the exercise of ordinary diligence, should have known it had suffered an injury from Newland's conduct more than two years prior to the filing of the

claims under the Victims Relief Act and RICO. To the extent that Branham believed the conduct was criminal or tortious, and not merely imprudent, such claims could have been timely pursued. They were not. Accordingly, the trial court properly granted summary judgment to the defendants on statute of limitations grounds. Because summary judgment was properly granted on this basis on November 18, 2012, we need not reach the issue of whether the trial court improvidently granted summary judgment on November 19, 2012, on grounds that the Victims Relief Act and RICO claims were additionally barred by the doctrine of res judicata.[11]

### Consolidated Appeal by Eckerle

### Standard of Review – Motion to Correct Error

Generally, we review a trial court's ruling on a motion to correct error for an abuse of discretion. City of Indianapolis v. Hicks, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), trans. denied. However, to the extent the issues raised on appeal are purely questions of law, our review is de novo. Id.

### Analysis

The Indianapolis law firm of Henderson Daily Withrow & Devoe (Henderson Daily) represented one of Newland's members, White River Venture Partners, L.P., and its manager, Samuel Sutphin, from September 22, 2003 to September 28, 2004, with regard to liquidation of BCU assets. Eckerle was one of the attorneys engaged in this representation.

---

[11] Neither do we find it necessary to address Branham's contention that the trial court improperly considered Branham's Second Amended Complaint with regard to Branham's knowledge of Newland's financial position, despite the striking of the pleading. Even without the stricken pleading, the designated materials support the conclusion that Branham knew, or in the exercise of ordinary diligence, should have known, at the time Harmon was deposed, of Newland's depleted assets.

During Eckerle's representation, the Town of Whitestown purchased BCU's assets. The Bankruptcy Court approved the sale, and the closing took place on July 20, 2004.

From September 28, 2004 through December 31, 2004, Henderson Daily represented Newland and its members in the BCU bankruptcy case. Henderson Daily ceased operations on December 31, 2004, and Eckerle continued his representation. On May 18, 2005, the date on which Branham's claims were denied by the Bankruptcy Court, Eckerle ceased his representation of Newland. Other attorneys entered notices of appearance and represented Newland at the jury trial. Eckerle was sued by Branham several years later, on December 30, 2011.

Eckerle, as did several other defendants, filed motions for summary judgment. However, the trial court declined to enter summary judgment in favor of Eckerle, instead granting Branham's motion to dismiss without prejudice. Eckerle argues that he was "identically situated" to the other defendants who obtained summary judgment in their favor and that the dismissal as opposed to judgment on the merits defied "basic notions of justice and fairness." Appellant's Brief at 19. He argues that he was wrongfully deprived of his statutory claim for attorney's fees for frivolous litigation.[12]

---

[12]   Generally, Indiana follows the "American Rule" under which parties pay their own attorney's fees unless an agreement between the parties, a statute, or other rule provides otherwise. Smyth v. Hester, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009) (citations omitted), trans. denied. However, Indiana Code § 34-52-1-1(b) provides that a "prevailing party" may recover "attorney's fees as part of the cost … if the court finds that either party" brought the action on a claim that is "frivolous, unreasonable, or groundless"; persisted in litigation even after that claim "clearly became frivolous, unreasonable, or groundless"; or litigated in bad faith.

A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. Kahn v. Cundiff, 533 N.E.2d 164, 167 (Ind. Ct. App. 1989), aff'd, 543 N.E.2d 627 (Ind. 1989).

In Principal Life Ins. Co. v. Needler, 816 N.E.2d 499, 503 (Ind. Ct. App. 2004), the Court discussed a non-exhaustive list of factors typically considered by a trial court entertaining a voluntary motion to dismiss:

> [T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss. Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part.

The trial court also observed that, in some instances, dismissal has been considered improper if a defendant would suffer "plain legal prejudice." (quoting Camilli v. Grimes, 436 F.3d 120, 123 (2nd Cir. 2005). (App. 953.)

Typically, when a trial court has examined these factors and rendered a decision, our review is for an abuse of discretion. Needler, 816 N.E.2d at 503. Here, however, the issue presented is one of law, that is, entitlement to summary judgment. Before the hearing on the motion to dismiss without prejudice, the trial court had already conducted summary judgment hearings and determined – correctly – that the statute of limitations had expired when Branham filed its Complaint. "The judgment sought shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C).

---

A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. Id. at 170-71.

This is no less true for Eckerle than other defendants. See AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc., 816 N.E.2d 40, 46 (Ind. Ct. App. 2004) ("Once evidence has been designated to the trial court by one party, that evidence is deemed designated and the opposing party need not designate the same evidence.")

The gravamen of Branham's Complaint was that funds were wrongfully diverted by Newland and its members so as to deprive Branham of payment. Branham alleged: "Each of the Defendants concealed, encumbered and/or transferred 'property'" and "Newland was stripped of all property available for execution of the Branham Judgment upon completion of those concealments, encumbrances and/or transfers." (App. 100, 102-03.) As to Eckerle's role in particular, Branham alleged that, at a January 2005 hearing,[13] Eckerle (acting as an agent for Newland and its members) "represented that adequate funds would be available to pay Branham under the Branham/Newland Agreement" and "agreed that BCU, Newland and its members intended any payment under the Branham/Newland Agreement to be made out of the proceeds from the sale of BCU's assets." (App. 107, 108.) Eckerle ceased his legal representation in 2005. The Complaint was filed in 2011, well outside the two-year statute of limitations.

Finally, the parties presented argument on whether a summary judgment ruling for Eckerle would be precluded because the Bankruptcy Court might exercise concurrent jurisdiction. In its order of dismissal, the trial court indicated that it had given great weight to this consideration. However, on motion to correct error, the trial court clarified that its

---

[13] The Complaint recited a date of "hearing before the Bankruptcy Court" as January 15, 2005. (App. 107.) According to Eckerle, a telephonic hearing took place on January 19, 2005.

25

dismissal order was not rendered strictly on this basis; rather, Branham had "presented an adequate reason for dismissal, <u>at the time the motion to dismiss was made</u>." (App. 971.) (emphasis in original.) Although the Eckerle allegations concern statements purportedly made in the Bankruptcy Court and, as we have already acknowledged, we have limited jurisdiction when bankruptcy proceedings are pending, the Bankruptcy Court plainly stated its non-involvement with distribution of funds by Newland (who was not a Debtor in Bankruptcy Court). Newland's distribution is the focus of the Complaint. There remains no risk of concurrent jurisdiction or conflicting decisions in this regard.

Summary judgment should be granted if the moving party deserves judgment as a matter of law. T.R. 56; <u>Lightle v. Harcourt Mgmt. Co. Inc.</u>, 634 N.E.2d 858, 860 (Ind. Ct. App. 1994), <u>trans. denied</u>. Eckerle, almost identically situated to the other defendants requesting summary judgment, should not be deprived of a ruling on the summary judgment motion because of a tactical request for dismissal.

## Conclusion

We affirm the November 18, 2012 grant of summary judgment. The November 19, 2012 grant of summary judgment is superfluous. We reverse the order dismissing Eckerle, without prejudice, and remand for entry of summary judgment in favor of Eckerle.

Affirmed in part, reversed in part, and remanded.

BROWN, J., and PYLE, J., concur.

26